# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1161

_____

In re: Nevel Properties Corporation

*Debtor*

------------------------------

Agri Star Meat & Poultry, LLC; SHF Industries, LLC, Now known as SHF Holdings LLC

*Appellant*s

v.

Nevel Properties Corporation

*Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque

_____

Submitted: April 14, 2014
Filed: August 28, 2014

_____

Before RILEY, Chief Judge, MELLOY and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

This bankruptcy case is another chapter in the legal saga of Sholom Rubashkin's meteoric rise and spectacular fall. See generally United States v. Rubashkin, 655 F.3d 849, 853-54 (8th Cir. 2011) (affirming Rubashkin's conviction and prison sentence of 324 months for "86 counts of bank, wire, and mail fraud; making false statements to a bank; money laundering; and violations of an order of the Secretary of Agriculture"). The appellant in this case is SHF Holdings, LLC (SHF), which acquired the vestiges of Rubashkin's bankrupt Agriprocessors, Inc. (Agriprocessors), now rebranded as Agri Star. The appellee and debtor is Nevel Properties Corporation (Nevel), whose current owner is Sholom Rubashkin's brother Tzvi "Heshy" Rubashkin.

Although the parties' filings complicate the case with several tangential issues, the core dispute on appeal is whether SHF has any rights to a well located on land owned by Nevel. The bankruptcy court[1] concluded SHF did not, and the district court[2] agreed. SHF appeals, and Nevel moves to dismiss the appeal based on the so-called "equitable mootness" doctrine. Having both constitutional and statutory jurisdiction, see U.S. Const. art. III, § 2; 28 U.S.C. § 158(d)(1), we affirm on the merits and deny the motion to dismiss.[3]

---

[1]The Honorable Thad J. Collins, Chief United States Bankruptcy Judge for the Northern District of Iowa.

[2]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

[3]Because we affirm on the merits, we deny as moot Nevel's motion to dismiss the appeal arguing the doctrine of "equitable mootness." See In re Westpointe, L.P., 241 F.3d 1005, 1009 (8th Cir. 2001)

## I.     BACKGROUND

Before unethical and criminal practices led to federal prosecution and bankruptcy, Sholom Rubashkin's business in Postville, Iowa, included Agriprocessors, a kosher meatpacking company, and Nevel, which owns and leases property. See Rubashkin, 655 F.3d at 853. Nevel rented residential property to employees of the meatpacking facility, and Nevel also owned a piece of non-residential property with a deep water well (one of three used by the meatpacking facility).

Nevel filed for bankruptcy under Chapter 11 on March 2, 2009, and lengthy proceedings unfolded in the Bankruptcy Court for the Northern District of Iowa. Eventually, Nevel filed an amended reorganization plan, which SHF found objectionable. This appeal arises from SHF's objections to the reorganization plan's handling of the deep water well. According to SHF, Nevel and SHF were parties to a "Deep Water Well Lease -- Water Line and Access Easements" (contract or lease) giving SHF (1) the exclusive right to use the deep water well in exchange for an annual payment, and (2) a non-exclusive right to access the well for maintenance and other purposes incident to the well's operation. In SHF's view, the contract was neither executory nor a lease, so Nevel could not reject it. Cf. 11 U.S.C. § 365(a) (allowing "the trustee" of an entity in bankruptcy to "assume or reject any executory contract or unexpired lease" "subject to the court's approval"). SHF also believes Nevel waived any argument that Agriprocessors had already rejected the contract.

The bankruptcy court agreed the contract was not executory, but still overruled SHF's objections because SHF was never a party to the contract. The bankruptcy court explained the contract was between *Agriprocessors* and Nevel—not *SHF* and Nevel—and, while Agriprocessors was in bankruptcy protection under the control of a court-appointed trustee, the contract was deemed rejected as a matter of law under 11 U.S.C. § 365(d)(4)(A). By the time SHF acquired Agriprocessors' assets, the contract was already broken: SHF neither became a party to the contract nor acquired

any rights from it. The bankruptcy court also rejected SHF's alternative argument, that Nevel waived Agriprocessors' trustee's rejection, because (assuming without deciding a prior § 365(a) rejection could be waived) the facts did not show any waiver by Nevel.

SHF appealed to the district court, which affirmed the bankruptcy court's decision. The district court was "satisfied that the Bankruptcy Court did not err in finding the totality of the substance of this economic transaction . . . to be an 'unexpired lease' within the meaning of 11 U.S.C. §[ ]365." Because the contract was an "unexpired lease," the district court detected no error in the bankruptcy court's conclusion that the contract was rejected as a matter of law under § 365, meaning SHF never acquired any rights under the contract. The district court also rejected SHF's waiver theory, explaining the bankruptcy court "considered and rejected the grounds raised by SHF in support of its waiver argument, including Nevel's claimed acquiescence in SHF's continuing possession and use of the well, and failure to invoice SHF for rent."

SHF now appeals to our court.

## II.   DISCUSSION

The parties ask us to decide five issues. All five of those issues boil down to one question: Did the district court err in concluding SHF had no rights to the deep water well? We conclude the district court did not err.

The bankruptcy court correctly found SHF never acquired any rights to the well because Agriprocessors' trustee was deemed to have rejected the contract as a matter of law. Our court, sitting "as a second court of review, . . . generally appl[ies] the same standards of review as the district court and review[s] the bankruptcy court's factual findings for clear error and its conclusions of law de novo." In re M & S Grading, Inc., 526 F.3d 363, 367 (8th Cir. 2008).

### 1. Agriprocessors' Trustee's Rejection of the Lease

Before SHF acquired Agriprocessors' assets, Agriprocessors was under the control of a trustee in Chapter 11 proceedings. The trustee did not assume the well lease within the period required under 11 U.S.C. § 365(d)(4), so the lease was "deemed rejected" well before SHF could have acquired any rights to the lease:

> [A]n unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
> > (i) the date that is 120 days after the date of the order for relief [unless extended by the bankruptcy court]; or
> >
> > (ii) the date of the entry of an order confirming a plan.

11 U.S.C. § 365(d)(4)(A). As the bankruptcy court found, "SHF does not argue that the [lease] was actually assumed in the 120-day period under the statute [or] that the Trustee attempted to preserve the Lease under the procedures required in § 365(d)." Far from assuming the lease in accordance with the provisions of § 365, the trustee *could not* have assumed the lease because Agriprocessors' rental payment default was never cured. See id. § 365(b)(1)(A) ("If there has been a default in an . . . unexpired lease of the debtor, the trustee *may not assume such . . . lease* unless, at the time of assumption of such . . . lease, the trustee cures, or provides adequate assurance that the trustee will promptly cure, such default." (emphasis added)). As a matter of fact and law, SHF never acquired any rights to the well.

### 2. SHF's Theories

In an effort to overcome the unambiguous effect of § 365(d)(4), SHF presents several theories.

First, SHF insists the contract—which it calls a "Well Lease and Easement"—was not actually a lease. As the bankruptcy court found and convincingly explained, "the totality of the arrangement [was] the functional equivalent of a lease" for two reasons. One, the core of the contract was, both by name and according to its terms, a lease requiring an annual inflation-adjusted rental payment. Two, the easement on which SHF heavily relies was both temporary and "non-exclusive," solely permitting Agriprocessors incidental access (for maintenance and waterline construction) to the *leased* property. This easement was granted "[i]n consideration of the payments, agreements and conditions" listed in the contract, and "upon the termination of th[e] Agreement," the easement and any associated rights would revert to Nevel (the lessor). In other words, the easement was inseparable from the well lease. We accordingly reject SHF's argument that the contract as a whole was not a lease.

Second, SHF theorizes that the pre-bankruptcy relationship between Agriprocessors and Nevel means "the bankruptcy court should have reviewed Agriprocessors' failure to assume the Well Lease and Agreement and Nevel's claim that the Well was not sold to SHF . . . under close, careful scrutiny." SHF's theory fundamentally misconceives the nature of heightened scrutiny for insider transactions. This scrutiny would, for example, allow Agriprocessors' *trustee* to avoid or reverse a preferential transfer of property by *pre*-bankruptcy Agriprocessors to Nevel. See 11 U.S.C. § 547(b). Thus, had Agriprocessors rejected the lease *before* entering bankruptcy, heightened scrutiny might well apply. But in this case it was the *trustee*, not the insiders at Agriprocessors, who rejected the lease—by the *trustee's* choosing not to assume the lease under § 365(d). The court-appointed trustee, by definition, must be independent and is required to operate at arm's length from interested parties. See 11 U.S.C. § 1104(b)(1), (2)(A) (requiring a "*disinterested* . . . trustee" (emphasis added)). The bankruptcy court appropriately scrutinized the trustee's presumptively disinterested decision not to assume the lease.

Third, SHF contends the bankruptcy court clearly "erred in holding that Nevel did not waive the right to argue that the well property lease was terminated and/or not assumed." Assuming a rejection *as a matter of law* under § 365(d) is waivable (a question we have not decided and need not consider today), the bankruptcy court's finding was far from clear error. We reprise how difficult it is to show clear error on appeal in a bankruptcy case:

> While our review is a searching and independent one, we also realize that we are the second court charged with reviewing the bankruptcy court's factual findings for clear error. Being the second court to review the record, we are reminded of another jurist's poignant and colorful description of the clear error standard: "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."

In re Papio Keno Club, Inc., 262 F.3d 725, 729 (8th Cir. 2001) (omission in original) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)). We smell nothing fishy in the bankruptcy court's factual findings.

These conclusions also dispose of SHF's remaining theories, which are predicated on the erroneous premise that the lease was never rejected as a matter of law. SHF's assertion that it clearly acquired the well lease is especially flawed because, as SHF concedes, "the Well Lease and Easement was not specifically listed as an asset to be sold." It was not listed, of course, because it had already been rejected.

## III.   CONCLUSION

We affirm the district court's affirmance of the bankruptcy court's well-reasoned decision, and deny Nevel's motion to dismiss.

_____