*431 OPINION
GREENAWAY, JR., Circuit Judge.
Appellant Quad/Graphics Inc. appeals from the judgment of the District Court affirming the Bankruptcy Court’s confirmation of 0ne20ne Communications, LLC’s (the “Debtor”) Chapter 11 plan of reorganization and dismissing Appellant’s bankruptcy appeal as equitably moot. Appellant contends that the District Court abused its discretion in dismissing its appeal as equitably moot. Appellant also asks us to use this appeal to overrule our adoption of equitable mootness in In re Continental Airlines, 91 F.3d 553, 560 (3d Cir.1996) (en banc) (“Continental”), contending that the doctrine is unconstitutional and contrary to the Bankruptcy Code. Continental remains the law of this circuit. This panel is not free to overturn a prece-dential opinion. In the absence of an en banc reversal, we are bound by Continental. Because the District Court abused its discretion under Continental, we will reverse the District Court’s judgment and remand for consideration of the merits of Appellant’s bankruptcy appeal.
I. Background
The Debtor, a billing services technology company, is a limited liability business and its sole member is Joli, Inc. Joanne Heverly owns seventy-five percent of Joli, Inc., and Richard Brammer, a former officer of the Debtor, owns the remaining twenty-five percent. Appellant, a printing company, holds the single largest claim against the Debtor and the Debtor’s CEO, Bruce Heverly, husband of Joanne Heverly, for $9,359,630.91, which stems from a judgment entered in the District Court for the Eastern District of Wisconsin.[1] The Court of Appeals for the. Seventh Circuit has since affirmed that judgment. See Quad/Graphics, Inc. v. 0ne20ne Commc’ns, LLC, 529 Fed.Appx. 784, 793 (7th Cir.2013).
The Debtor, filed a voluntary petition for relief under Chapter 11 of the United State Bankruptcy Code, 11 U.S.C. § 101 et seq. (the “Bankruptcy Code”), in the Bankruptcy Court for the District of New Jersey (the “Bankruptcy Court”). Thereafter, the Office of the United States Trustee formed an official unsecured creditors committee (the “Committee”) consisting of Appellant, Ricoh Production Print Solutions, LLC, and Enterprise Group.
Between September 2012 and January 2014, the Debtor filed the First,[2] Second, and Third Amended Plans of Reorganization. After the Bankruptcy Court denied confirmation of the First Amended Plan of Reorganization, Bela Szigethy (“Szigethy”) agreed to make an investment in the Debtor.[3] The Debtor filed a Fourth Amended Plan of Reorganization (the “Plan”) on January 25, 2013, under which a third-party, One2One Holdings, LLC (“Plan Sponsor”) would acquire a membership interest in the Debtor. The Plan incorporated a Plan Support Agreement which provided the Plan Sponsor with the exclusive right to purchase 100% of the Debtor’s equity for $200,000. Neither the Plan *432 Sponsor nor any third-party was to contribute any additional capital to fund the Plan. The Plan also incorporated the terms of the Committee Agreement with respect to distributions and the waiver of preference actions against unsecured creditors.
On March 5, 2013, after holding a five-day confirmation hearing, and over the objection of Appellant, Bankruptcy Judge Winfield entered an order (the “Confirmation Order”) confirming the Plan.[4] The Confirmation Order was automatically stayed for fourteen days pursuant to Federal Rule of Bankruptcy Procedure 3020(e). Appellant moved for a stay pending appeal, which was denied. The Bankruptcy Court also denied a request by the Debtor to shorten the automatic fourteen-day stay.[5] The parties briefed the merits of the appeal, but the District Court never reached those issues, as it granted the Debtor’s motion to dismiss the appeal as equitably moot on June 24, 2013.
II. Jurisdiction and Standard of Review
The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b). The District Court had jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.
We review for abuse of discretion a district court’s decision that a bankruptcy appeal is equitably moot. Continental, 91 F.3d at 560.
III. Analysis
a. Appellant’s Challenge to the Equitable Mootness Doctrine
As an initial matter, Appellant asserts that the equitable mootness doctrine is unconstitutional and contrary to the Bankruptcy Code. Because we have • already approved the doctrine of equitable mootness in Continental,[6] only the Court *433 sitting en banc would have the authority to reevaluate our prior holding. See United States v. White, 748 F.3d 507, 512-13 (3d Cir.2014).[7] This Court may only decline to follow a prior decision of our Court without the necessity of an en banc decision when the prior decision conflicts with a Supreme Court decision. See Chester ex. rel. N.L.R.B. v. Grane Healthcare Co., 666 F.3d 87, 94 (3d Cir.2011); see also Morrow v. Balaski 719 F.3d 160, 179 (3d Cir.2013) (en banc) (Smith, J., concurring) (“ ‘[E]ven in constitutional cases’ ..., the doctrine of stare decisis ‘carries such persuasive force’ that departing from it has ‘always required’ some ‘special justification.’ ”) (quoting Arizona v. Rumsey, 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984)).
Appellant argues that our equitable mootness jurisprudence should be reevaluated in light of the Supreme Court’s decision in Stern v. Marshall, — U.S. -, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). Appellant contends that after Stern, a bankruptcy court’s ability to enter binding, final judgments in “core” bankruptcy proceedings — like plan confirmations — must be subject to district court review on appeal under traditional appellate standards. Stem alone does not permit us to depart from Continental.
In Stern, the Supreme Court granted certiorari to resolve the question of whether 28 U.S.C. § 157(b)(2)(C) is unconstitutional because it gives non-Article III judges the power to render final judgments on common law compulsory counterclaims that are not necessarily resolved in the process of allowing or disallowing the defendant’s proof of claim. The Court in Stem found that the provision unconstitutionally delegated the judicial power of the United States to non-Article III bankruptcy judges. Justice Roberts’s opinion relied heavily on Murray’s Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272, 284, 18 How. 272, 15 L.Ed. 372 (1855), which stated that with the exception of certain “public rights,” Congress cannot “withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at common law, or in equity, or admiralty.” Because the counterclaim at issue in Stem was a tort claim at common law, the Court held that “[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on [this] state law counterclaim.” Stern, 131 S.Ct. at 2620.
Thus, the Court in Stem made clear that non-Article III bankruptcy judges do not have the constitutional authority to adjudicate a claim that is exclusively based upon a legal right grounded in state law despite appellate review of the bankruptcy judge’s decision by an Article III judge. However, Stem did not consider the authority of bankruptcy judges to make final determinations regarding other kinds of claims and counterclaims brought by debtors and creditors, nor did Stem consider whether Article III requires appellate review of a bankruptcy judge’s decisions by an Article III judge. Accordingly, we are obligated to apply this Court’s equitable mootness doctrine notwithstanding Stern.
b. Equitable Mootness Analysis
Following confirmation of a reorganization plan by a bankruptcy court, an aggrieved party has the statutory right to appeal the court’s ruling. Once a bankruptcy appeal has been filed, federal courts have a “ ‘virtually unflagging obligation’ ” to exercise the jurisdiction conferred on *434 them. In re Semcrude, L.P., 728 F.3d 314, 320 (3d Cir.2013) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Before there is a basis to avoid deciding the merits of an appeal, we must first determine that granting the requested relief is almost certain to produce a “perverse” outcome— significant “injury to third parties” and/or “chaos in the bankruptcy court” from a plan in tatters. In re Phila. Newspapers, LLC, 690 F.3d 161, 168 (3d Cir.2012). Only in such circumstances is equitable mootness a valid consideration.
A court decides to dismiss an appeal as equitably moot through the consideration of the following “prudential” factors:
(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments.
Id. (citing Continental, 91 F.3d at 560). Depending on the circumstances, each factor is given varying weight. Id. (citing In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir.2000)).
These factors are interconnected and overlapping. Semcrude, 728 F.3d at 320 (citing Phila. Newspapers, 690 F.3d at 168-69). “The second factor principally duplicates the first in the sense that a plan cannot be substantially consummated if the appellant has successfully sought a stay.” Phila. Newspapers, 690 F.3d at 169 (internal quotation marks omitted). In analyzing the first factor, courts have considered “whether allowing an appeal to go forward will undermine the plan, and not merely whether' the plan has been substantially consummated under the Bankruptcy Code’s definition.”[8] Id. at 168-69. This collapses the first and fourth factors. The third factor adds an additional consideration — whether granting relief will undermine “the reliance of third parties, in particular investors, on the finality of the transaction.” Id. at 169 (internal quotation marks omitted). “Finally, the fifth factor supports the other four by encouraging investors and others to rely on confirmation orders, thereby facilitating successful reorganizations by fostering confidence in the finality of confirmed plans.” Id.
Taken together, these factors require that the equitable mootness doctrine be applied only to “prevent[ ] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract.” Nordhoff Invs., Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir.2001). The party seeking dismissal bears the burden to demonstrate that, weighing the relevant factors, dismissal is warranted. Semcrude, 728 F.3d at 321.
In practice, equitable mootness proceeds in two analytical steps: “(1) whether a confirmed plan has been substantially consummated; and (2) if so, *435 whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on the plan’s confirmation.” Id. “Satisfaction of [the] statutory standard indicates that implementation of the plan has- progressed to the point that turning back may be imprudent.” Id.
If the confirmed plan has been substantially consummated, a court should next determine whether granting relief will require undoing the plan as opposed to modifying it in a manner that does not cause its collapse. See In re Zenith Elecs. Corp., 329 F.3d 338, 346-47 (3d Cir.2003) (appeal not equitably moot where disgorgement of professional fees would not unravel plan); United Artists Theatre Co. v. Walton, 315 F.3d 217, 228 (3d Cir.2003) (appeal not equitably moot where striking indemnification provision would léave' the plan otherwise intact); PWS, 228 F.3d at 236 (appeal not equitably moot where plan could go forward even if certain releases were stricken). A court should also consider the extent a successful appeal, by altering the plan or otherwise, will harm third parties who have acted reasonably in reliance on the finality of plan confirmation. Semcrude, 728 F.3d at 321.
c. Application of the Equitable Mootness Doctrine
Since this Court’s adoption of the equitable mootness doctrine in Continental, we have emphasized that the doctrine must be construed narrowly and applied in limited circumstances. In Philadelphia Newspapers, this Court emphasized “that a court only should apply the equitable mootness doctrine ... ‘[in] complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract.’ ” 690 F.3d at 169 (quoting Nordhoff, 258 F.3d at 185). “The doctrine is quite rightly ‘limited in scope’ and ‘cautiously applied.’ ” Id.' (quoting Continental, 91 F.3d at 559). Further, the doctrine’s “judge-made origin, coupled with the responsibility of federal courts to exercise their jurisdictional mandate, obliges us ... to proceed most carefully before dismissing an appeal as equitably moot.” Semcrude, 728 F.3d at 318.
Our prior dismissals pursuant to the equitable mootness doctrine are inapposite here. Those prior applications of the doctrine involved complex bankruptcy reorganizations that included multiple related debtors, hundreds of millions of dollars in assets, liabilities and claims, and hundreds or thousands of creditors. For example, Continental involved the merger of fifty-three debtors with Continental, a $110 million investment in the reorganized debtor, the transfer by foreign governments of route authorities, and the assumption of leases and executory contracts worth over five billion dollars. 91 F.3d at 567. Similarly, in Nordhoff, the reorganization plan required eighteen months of preparation between several parties, the exchange of over $100 million in bonds, the issuance of new stock, the extension of a sixty million dollar credit facility, and the exchange and cancellation of over $100 million of debt. 258 F.3d at 182,186.
In contrast here, the Debtor’s reorganization involved a $200,000 investment in the reorganized debtor and only one secured creditor that held a blanket lien on the Debtor’s assets for less than $100,000. Further, the Debtor had only seventeen unsecured creditors, not including insiders. In addition, the Plan did not provide for new financing, mergers or dis-solutions of entities, issuance of stock or bonds, name change, change of business location, change in management or any *436 other significant transactions. The record illustrates that this case did not involve a sufficiently complex bankruptcy reorganization such that dismissal on the basis of equitable mootness would be appropriate.
Consideration of the prudential factors also demonstrates that the District Court abused its discretion. The District Court found that the Plan was substantially consummated. The Debtor transferred all property required to be transferred on or shortly after the effective date of the Plan, and the reorganized debtor commenced distributions under the Plan. See 11 U.S.C. § 1101(2)(C) (requiring only the “commencement of distribution under the plan”). The District Court observed that Appellant failed to obtain a stay. We do not dispute those determinations. However, the District Court also found that granting relief to Appellant would lead to a perverse outcome by causing the Plan to be fully unraveled, resulting in significant harm to third parties. We disagree. In our judgment, the proper application of the prudential factors does not permit dismissal on equitable mootness grounds.
As noted, the first and fourth prudential factors require that a court consider whether allowing an appeal to go forward will undermine the plan. Semcrude, 728 F.3d at 321. In finding that these factors weigh in favor of equitable mootness, the District Court found that Appellant “offered no options which would allow the Court to grant it relief without [unscrambling the Plan] entirely.” In re One 2 One Commc’ns, LLC, No. 13-1675, 2013 WL 3864056, at *6 (D.N.J. July 24, 2013). In reaching this conclusion, the District Court erred in two fundamental respects: it placed the burden on Appellant to demonstrate that this factor weighed in its favor, and it concluded that because granting Appellant’s requested relief would reverse the Plan, this factor necessarily favored the Debtor.
To the contrary, it was the Debt- or’s burden, as the party seeking dismissal, to demonstrate that the prudential factors weighed in its favor. See Semcrude, 728 F.3d at 321. Further, courts are obligated to consider not only whether granting the requested relief would require reversal of the plan, but also whether the plan could be retracted without great difficulty and inequity. See Nordhoff, 258 F.3d at 186. We have noted in prior cases that reversal of a confirmation order is more likely to lead to an inequitable result “where the reorganization involves intricate transactions or where outside investors have relied on the confirmation of the plan.” Continental, 91 F.3d at 560-61 (citations omitted); see also Nordhoff, 258 F.3d at 186 (finding that plan that involved hundreds of millions of dollars, the issuance of unretractable bonds, and restructuring the debt, assets, and management of a major corporation “could [not] be reversed without great difficulty and inequity”). We have most frequently found that a plan could not be retracted when the reorganized debtor issued publically traded debt or securities. See, e.q., Nordhoff, 258 F.3d at 186.
Here, the Plan did not involve intricate transactions and the Debtor did not present sufficient evidence that the Plan would be difficult to unravel. Instead, the Debt- or identified various post-confirmation transactions entered into in the ordinary course of the reorganized Debtor’s business. These routine transactions, including the investment by the Plan Sponsor, the commencement of distributions, the hiring of new employees and entering into various agreements with existing and new customers are likely to transpire in almost every bankruptcy reorganization where the appealing party is unsuccessful in ob *437 taining (or fails to seek) a stay. Further, the Plan did not involve the issuance of any publicly traded securities, bonds, or other circumstances that would make it difficult to retract the Plan. Accordingly, the District Court abused its discretion in finding that the first and fourth factors favored the Debtor.
Furthermore, under the third factor, “the reliance by third parties, in particular investors, on the finality of the [Plan’s confirmation]” is minimal. Continental, 91 F.3d at 562. The District Court articulated no specific harm that would inure to the detriment of third parties and instead stated that, “0ne20ne argues that the relief Appellant seeks would unravel the Plan in its entirety and call into question the continued viability of 0ne20ne to the detriment of third parties.” One 2 One Commc’ns, 2013 WL 3864056, at *8.[9] However, as the District Court noted, “[t]his is not a case where a debtor issued publicly traded securities or debt pursuant to a plan that third parties to the bankruptcy case could have purchased on the open market.” Id. at *7 (alteration in original) (internal quotation marks omitted). Nevertheless, the Debtor now argues that allowing Appellant’s appeal to be heard on the merits would inevitably affect the rights of parties not before the court such as creditors, employees, and third-party workers.
This type of minimal third-party reliance is present in nearly all bankruptcy reorganizations and cannot be characterized as almost certain to cause significant injury to third parties. Cf. Continental, 91 F.3d at 556 (emphasizing that the record was replete with evidence that investing parties not before the court relied on the confirmation order in making decision to enter into a $450 million investment agreement under a complex arrangement). In light of the limited evidence of potential third-party injury, the District Court also abused its discretion in determining that this factor favored the Debtor.
Finally, the prudential consideration of public policy weighs in favor of providing Appellant with appellate review of its bankruptcy appeal. “Though the finality of the Bankruptcy Court’s decision necessarily will be disturbed,” this Court has recognized an appealing party’s “statutory right to review of the [Bankruptcy] Court’s decision.” Phila. Newspapers, 690 F.3d at 171. Further, “[t]he presumptive position remains that federal courts should hear and decide on the merits cases properly before them.” Semcrude, 728 F.3d at 326.
Here, Appellant has repeatedly advanced the contention that it is entitled to appellate review. Appellant objected to the Plan, applied for a stay, filed an appeal of the Confirmation Order and sought emergency appellate review. In light of the other prudential factors, denying Appellant review now would be distinctly inequitable.[10]
IV. Conclusion
Absent en banc reconsideration, we cannot entertain Appellant’s challenge to equi *438 table mootness, as Continental remains the law of this circuit. Because the District Court abused its discretion under Continental, we will reverse the District Court’s dismissal and remand for its consideration of Appellant’s bankruptcy appeal on its merits.

. The Debtor's unsecured claims, not including Appellant’s claim, total less than $1.3 million.

. The First Amended Plan incorporated an agreement with the Committee (the "Committee Agreement”) providing for: (i) a distribution to unsecured creditors of $1.25 million over seven years, (ii) a non-compete clause binding the Heverlys and their relatives until all payments were made to unsecured creditors, and (iii) waiver of preference actions against unsecured creditors.

.Szigethy is the founder, co-owner, and Co-CEO of The Riverside Company, a global private equity firm holding over $3 billion in assets.

. Appellant, the sole objector to the Plan, opposed confirmation on the basis that, inter alia, the Plan violated the absolute priority rule under 11 U.S.C. § 1129(b) by allowing equity holders to retain property without paying unsecured creditors in full.

. On March 18, 2013, Appellant filed Notices of Appeal from the Bankruptcy Court’s Confirmation Order and the Bankruptcy Court's Order denying Appellant’s motion for a stay pending appeal. On March 19, 2013, the final day of the automatic stay, Appellant filed an emergency application pursuant to Federal Rule of Bankruptcy Procedure 8005 seeking to temporarily stay the Confirmation Order, and requesting that the Court order appellees to 'show cause as to why a stay pending appeal should not issue. Once the District Court denied its application, Appellant appealed that decision to the Third Circuit, which upheld the denial of the stay. Appellant subsequently sought injunctive relief from the District Court, which was denied pursuant to the law of the case doctrine.

. It should be noted that nearly all of the other Courts of Appeals with jurisdiction to hear bankruptcy appeals have endorsed some form of the equitable mootness doctrine. See In re Healthco Int’l, Inc., 136 F.3d 45, 48 (1st Cir.1998); In re Charter Commc’ns, Inc., 691 F.3d 476, 481 (2d Cir.2012); Behrmann v. Nat'l Heritage Found., 663 F.3d 704, 713-14 (4th Cir.2011); In re Scopac, 624 F.3d 274, 281-82 (5th Cir.2010); In re Am. HomePatient, Inc., 420 F.3d 559, 563-65 (6th Cir. 2005); In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir. 1994); In re Thorpe Insulation Co., 677 F.3d 869, 879-83 (9th Cir.2012); In re Paige, 584 F.3d 1327, 1337-38 (10th Cir.2009); In re Lett, 632 F.3d 1216, 1225-26 (11th Cir.2011); In re AOV Indus., Inc., 792 F.2d 1140, 1147-48 (D.C.Cir.1986). The Eighth Circuit has yet to address the merits of the doctrine's applicability in a precedential opinion. Compare In re Nevel Props. Corp., 765 F.3d 846, 848 & n. 3 (8th Cir.2014) (affirming on the merits and denying as moot appellee’s motion to dismiss the appeal as equitably moot), with In re President Casinos, Inc., 409 Fed.Appx. 31, 31-32 (8th Cir.2010) (per curiam) (affirming district court’s dismissal of bankruptcy appeal as equitably moot).

. See also 3d Cir. I.O.P. 9.1 (2010) ("[N]o subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so.”).

. Substantial consummation is defined in the Bankruptcy Code to mean the
(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C)commencement of distribution under the plan.
11 U.S.C. § 1101.

. Indeed, the Debtor concedes on appeal that the risk of harm is speculative: "granting the Appellant's requested relief would potentially jeopardize the Reorganized Debtor's successful emergence from chapter 11 and seriously threaten the viability of its ongoing business.” Appellee’s Br. 42 (quoting App. 3161) (internal quotation marks omitted).

. Appellant also argues on appeal that the District Court abused its discretion by dismissing its appeal of the third-party releases in the Plan. In light of our finding that the District Court abused its discretion in dismissing Appellant's entire appeal as equitably moot, we need not consider Appellant’s separate argument as to the third-party releases.