# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3413

No. 19-3487

_____

In re: VeroBlue Farms USA, Inc.

*Debtor*

------------------------------

FishDish, LLP

*Appellant/Cross-Appellee*

v.

VeroBlue Farms USA, Inc.; Alder Aqua, LTD.

*Appellee*s

Broadmoor Financial, L.P.

*Appellee/Cross-Appellant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: January 12, 2021
Filed: August 5, 2021

_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

Debtors in this Chapter 11 bankruptcy proceeding are VeroBlue Farms USA, Inc., and affiliated entities ("Debtors"). A VeroBlue preferred shareholder, FishDish, LLP ("FishDish"), appeals the district court's order granting appellees' motions to dismiss FishDish's appeal of the bankruptcy court order confirming Debtors' Chapter 11 plan of reorganization over FishDish's objections, and certain pre-confirmation orders. Appellees are VeroBlue Farms, the reorganized debtor; Alder Aqua, Ltd. ("Alder Aqua"), Debtors' plan of reorganization sponsor; and senior secured creditor Broadmoor Financial, L.P. ("Broadmoor"). In dismissing the appeal, the district court invoked equitable mootness, a bankruptcy doctrine adopted by our sister circuits (though not uniformly), and by the Eighth Circuit Bankruptcy Appellate Panel and Eighth Circuit district courts. We have never expressly adopted the doctrine,[1] nor has the Supreme Court. Alternatively, the court considered appellees' jurisdictional defenses, including timeliness, and concluded it did have subject matter jurisdiction. Broadmoor cross appeals the district court's ruling that FishDish's appeal from one order, the "Claim Objection Order," though untimely under Rule 8002(a)(1) of the Federal Rules of Bankruptcy Procedure, was not subject to dismissal under 28 U.S.C. § 158(c)(2) because the statute only applies to appeals from the "final judgments, orders, and decrees" referred to in § 158(a)(1).

---

[1]We upheld the district court's invocation of "equitable mootness" without discussion in In re President Casinos, Inc., 409 F. App'x. 31, 31-32 (8th Cir. 2010), an unpublished, non-precedential opinion. In In re Nevel Props. Corp., 765 F.3d 846 (8th Cir. 2014), we affirmed on the merits and denied as moot a motion to dismiss the appeal under the equitable mootness doctrine. As we will explain, this should almost always be the preferred disposition.

We agree that the district court and this court have statutory subject matter jurisdiction. However, we conclude the district court erred in limiting *the mandatory but non-jurisdictional* timeliness requirements of Rule 8002 to appeals from final bankruptcy court orders. As FishDish has conceded its appeal from the pre-confirmation Claim Objection Order was untimely under Rule 8002, we affirm the grant of appellees' Partial Motion to Dismiss Appeal on this alternative ground.

Regarding the central issue on appeal, what has misleadingly come to be known as "equitable mootness," like the Tenth Circuit we agree with "[e]very other circuit to consider the issue . . . that 'equitable,' 'prudential,' or 'pragmatic' considerations can render an appeal of a bankruptcy court decision moot even when the appeal is not constitutionally moot." In re Paige, 584 F.3d 1327, 1337 (10th Cir. 2009). However, invoking this doctrine often results in "the refusal of the Article III courts to entertain a live appeal over which they indisputably possess statutory jurisdiction and in which meaningful relief can be awarded." In re Cont'l Airlines, 91 F.3d 553, 571 (3d Cir. 1996) (Alito, J., dissenting), cert. denied sub nom. Bank of N.Y. v. Cont'l Airlines, Inc., 519 U.S. 1057 (1997). An Article III appellate court has a "virtually unflagging obligation" to exercise its subject matter jurisdiction. In re Semcrude, L.P., 728 F.3d 314, 320 (3d Cir. 2013) (quotation omitted). Therefore, as in Paige, Semcrude, and numerous other circuit court decisions, we conclude that the district court did not apply a sufficiently rigorous test to determine when bankruptcy equities and pragmatics justify foregoing Article III judicial review of a bankruptcy court order confirming a Chapter 11 plan. Accordingly, we remand for further district court proceedings.

## I. Background.

Founded in 2014, Debtors were in the aquaculture business -- farming fish and selling those fish through wholesalers to restaurants and grocery chains. Kenneth Lockard, an Iowa businessman, formed FishDish to invest in the Debtors. In the

summer of 2016, Debtors sold $6 million in preferred shares to FishDish and $28 million to Alder Aqua, a British Virgin Islands entity allegedly owned and controlled by Dr. Otto Happel and his family. In addition, certain Debtors borrowed $29 million from Amstar Group, LLC (the "Credit Facility"), also allegedly owned and controlled by Dr. Happel, a loan secured by substantially all of Debtors' assets. As a result, Lockard and Alder Aqua representatives sat on the Debtors' board. Lockard often voted en bloc with the founders. In December 2017, Amstar transferred its rights under the Credit Facility to Broadmoor. Alder Aqua loaned Debtors additional funds in 2018 and acquired a participation interest in the Credit Facility. By early 2018, Alder Aqua had taken control of the Debtors, terminating the founders and installing their appointees to the board and causing Lockard to resign from the board.

The Debtors filed a voluntary Chapter 11 bankruptcy petition on September 21, 2018, listing an undisputed obligation to the Credit Facility as approximately $54 million -- well in excess of Debtors' assets. On motion of the Debtors, the bankruptcy court promptly entered an interim post-petition financing order authorizing Debtors to borrow $2 million from Alder Aqua as Lender to finance post-petition obligations and to grant Lender a "first priority priming lien" under 11 U.S.C. § 364(d) on its business assets, and granting Broadmoor an Adequate Protection Lien equal to the diminution in value of any valid pre-petition lien.

No interested party objected to the interim order. On October 17, the bankruptcy court entered a final debtor-in-possession financing order (the "DIP Order"). The DIP Order provided that "the Broadmoor Secured Debt and Broadmoor Lien shall be deemed to be allowed for all purposes in the Chapter 11 Cases . . . and shall not be subject to challenge by any party in interest as to extent, validity, priority, or otherwise" unless "(i) the Debtors receive notice of a potential Challenge during the Investigation Period from the Committee and (ii) the Court rules in favor of the plaintiff in any timely and properly filed Challenge resulting therefrom." The DIP Order defined "Committee" as an "official committee in the Chapter 11 case." See

-4-

11 U.S.C. § 1102. Section 8(a) defined the Challenge Procedure. Section 8(b) provided that if "a Challenge is not timely commenced," the Broadmoor Secured Debt and Lien "shall be deemed to be allowed for all purposes . . . and shall not be subject to challenge by any party in interest." No party appealed the DIP Order.

On October 24, the United States Trustee appointed the Official Committee of Unsecured Creditors ("Creditors Committee") under 11 U.S.C. § 1102. The Creditors Committee investigated the Broadmoor claim and on December 19 sent Debtors a lengthy and timely challenge notice under Section 8(a) of the DIP Order demanding that Debtors initiate an adversary proceeding against Broadmoor, Aqua Alder, Amstar, and others, or consent to the Creditors Committee's standing to prosecute an adversary proceeding, for breaches of fiduciary duty, corporate waste and usurpation of corporate opportunities, equitable subordination or recharacterization of Broadmoor's claim under the Credit Facility, and fraud (the "Challenge Notice"). The next day, an unofficial Ad Hoc Committee of Equity Security Holders ("AHC") -- consisting of FishDish and certain common shareholders of the Debtors -- sent Debtors a letter joining the Creditors Committee Challenge Notice. The AHC also filed an Objection to approval of Debtors' Disclosure Statement for the plan. See 11 U.S.C. § 1125(b).

On January 14, 2019, the bankruptcy court held a hearing limited to the Debtors' disclosures. Debtors filed a Modified Chapter 11 Plan and Modified Disclosure Statement on February 16. The bankruptcy court approved the amended disclosure statement and scheduled a preliminary confirmation hearing on March 20 (the "Disclosure Order").

On January 13, the AHC moved for an order "extending the procedural protections of paragraph 8 of the Final DIP Order" to the AHC. In early February, the AHC moved for an order "confirming" its derivative standing to pursue the claims

demanded in the Challenge Notice (the "Standing Motion"). <u>See generally</u> <u>In re Racing Servs., Inc.</u>, 540 F.3d 892, 904-05 (8th Cir. 2008). After a hearing on February 4, the bankruptcy court entered an order deferring ruling on AHC's Standing Motion pending plan confirmation proceedings.

On March 5, the Creditors Committee notified the bankruptcy court it had settled its claims against Debtors in return for proposed plan amendment providing relief for the unsecured creditors. Broadmoor moved to enforce the DIP Order's Section 8 claim bar against the AHC, and Debtors moved to bar AHC from further participation under Bankruptcy Rule 2019. After hearings, the bankruptcy court issued an order on April 3, 2019 (the "AHC Standing Order") stating in relevant part:

> IT IS FURTHER ORDERED THAT, for all parties in interest, objections to the Broadmoor Secured Debt . . . as well as any and all claims held by debtor, or derivative of Debtor's rights, for the recharacterization or equitable subordination of the Broadmoor Secured Debt, are barred, because no timely challenge was made pursuant to the DIP Order and for other reasons set forth on the record.

> IT IS FURTHER ORDERED THAT, for all parties in interest, any objections relating to the allegations and claims set forth in the Challenge Notice attached as an exhibit to the Motion are barred, as those claims are not colorable and for other reasons set forth on the record.[2]

FishDish then 1) objected to Broadmoor's claim, 2) moved for leave to initiate discovery, and 3) objected to the amended disclosure statement. After a pre-confirmation hearing, the bankruptcy court denied FishDish's motion for discovery.

---

[2]The order also granted the Debtors' motion under Rule 2019. The AHC's separate appeal of that order is pending in the United States District Court for the Northern District of Iowa.

(the "Discovery Order"). It clarified at the April 17 confirmation hearing that FishDish's objections to the Broadmoor claim were barred but offered FishDish an opportunity to make an offer of proof to bolster the record on appeal. After the confirmation hearing concluded on April 18, the court entered a text order denying the FishDish's claim objection (the "Claim Objection Order"). On April 22 the bankruptcy court approved the Plan of reorganization ("Plan Confirmation Order").

On May 6, FishDish filed a notice of appeal identifying as the matters being appealed the Plan Confirmation Order, the Disclosure Order, the AHC Standing Order, the Discovery Order, and the Claim Objection Order. FishDish elected an appeal to the Bankruptcy Appellate Panel, but Alder Aqua timely transferred the appeal to the District Court for the Northern District of Iowa. See 28 U.S.C. § 158(c)(1)(B); Bankruptcy Rule 8005. The bankruptcy court entered an order confirming the Plan, as amended, on May 7, 2019.

The limited record on appeal reveals that, after confirmation of the Plan: (1) Alder Aqua funded the Plan with $13.5 million; (2) Debtors cancelled all the outstanding common and preferred stock and re-issued stock to Alder Aqua; (3) the Class 3 claimants received $294,700; (4) the Class 5 creditor trust received $620,000, which has since paid or settled claims in the amount of $272,000; (5) Broadmoor received $6,000,000; and (6) Alder Aqua released its $5,025,000 claim under the credit facility, as well as its $2,000,000 claim for the DIP bridge financing. Alder Aqua, as plan sponsor and sole shareholder of the reorganized Debtors, assumed management, and deferred its commitment to invest $21,400,000 "for capital investments for the Debtors retrofit and additional working capital." The bankruptcy court closed the case. See Fed. R. Bankr. P. 3022; 11 U.S.C. § 350.[3]

---

[3]We grant the motion to supplement the record with the closure order.

In its appeal of the Plan Confirmation Order, FishDish argued the Plan (1) unfairly discriminates between members of the same class of shareholders; (2) violates the absolute priority rule; (3) was proposed in bad faith; (4) is not in the best interests of the creditors for failure to investigate and value the Challenge Notice claims; and (5) is not feasible for want of funding. Alder Aqua moved to dismiss based on the "doctrine of equitable mootness," bankruptcy standing, and waiver. Broadmoor filed a partial motion to dismiss the appeal of the Claim Objection Order as untimely. Without reaching the merits, the district court dismissed FishDish's appeal as "equitably moot." It further ruled FishDish as a "person aggrieved" has standing to appeal the Plan's confirmation, and that FishDish's appeal of the Claim Objection Order is timely because it was not a final order. FishDish appeals the equitable mootness dismissal; Broadmoor cross-appeals the timeliness issue.

## II. Timeliness, a Potential Jurisdictional Issue.

Bankruptcy Rule 8002(a)(1) provides: "Except as provided in subdivisions (b) and (c) [which are not at issue], a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." "Bankruptcy Rules prescribed by [the Supreme Court] for the practice and procedure in cases under title 11 . . . do not create or withdraw federal jurisdiction." Kontrick v. Ryan, 540 U.S. 443, 453 (2004). But "a rule is jurisdictional if the legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." Gonzalez v. Thaler, 565 U.S. 134, 141 (2012).

The appellate jurisdiction of a district court, a court of appeals, or a bankruptcy appellate panel ("BAP") to review a bankruptcy court order is governed by 28 U.S.C. § 158. Subsection § 158(a) provides:

(a) The district courts of the United States shall have jurisdiction to hear appeals

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 . . .; and

(3) with leave of court, from other interlocutory orders and decrees;

of bankruptcy judges . . . .

Subsection § 158(c)(2) provides: "An appeal under subsection[] (a) . . . shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts, and in the time provided by Rule 8002 of the Bankruptcy Rules." The jurisdictional issue is whether the incorporation of Rule 8002(a)(1)'s time-limit in 28 U.S.C. § 158(c)(2) creates a statutory limitation on federal district courts' subject-matter jurisdiction. See Kontrick, 540 U.S. at 453. If it does, then the district court should have addressed this issue before the non-jurisdictional issue of equitable mootness because "a court cannot issue a ruling on the merits when it has no jurisdiction because to do so is, by very definition, for a court to act ultra vires." Brownback v. King, 141 S. Ct. 740, 749 (2021) (cleaned up); see In re AFY, 734 F.3d 810, 816 (8th Cir. 2013), cert. denied sub. nom Sears v. Badami, 572 U.S. 1117 (2014). Therefore, we address this issue -- the crux of Broadmoor's cross appeal regarding the Claim Objection Order -- before addressing equitable mootness.

We upheld the dismissal of a bankruptcy appeal for failure to comply with Rule 8002 in In re Delta Engineering Intern., Inc., 270 F.3d 584, 586 (8th Cir. 2001). But we have not held that Rule 8002's 14-day deadline for filing appeals from bankruptcy court decisions is jurisdictional. (The Eighth Circuit BAP has, but its rulings are not controlling on this Article III issue.) A number of our sister circuits have concluded that Rule 8002 is jurisdictional, like Rule 4(a)(6) of the Federal Rules of Appellate

Procedure.  See the cases cited in In re Tennial, 978 F.3d 1022, 1026-27 (6th Cir. 2020).  But after careful consideration of these contrary cases, we agree with the careful analysis in Tennial and conclude that Rule 8002's 14-day deadline is *mandatory but not jurisdictional*.  Judge Sutton explained in Tennial, 978 F.3d at 1025-26, 1028:

> In [28 U.S.C. § 158(c)(2)], Congress merely referred to any appeal deadlines created by the Bankruptcy Rules.  Nothing about that reference indicates that Congress meant to attach subject matter jurisdiction consequences to deadlines established by the Bankruptcy Rules.  Much less did it do so "clearly" with that modest reference.

> \* \* \* \* \*

> [I]f deadlines established by the rules process alone created jurisdictional limits, that would mean the rules committee could change the scope of federal court subject matter jurisdiction on its own. . . .  But the Constitution gives that power to Congress alone. . . . The rules committees, as it happens, have changed the bankruptcy appeal deadline since 28 U.S.C. § 158 was enacted -- from 10 to 14 days. . . . How, then, can we say that Congress "specified" [that] deadline . . . .?

> \* \* \* \* \*

> Bankruptcy Rule 8002(a)(1)-s 14-day time limit for filing a notice of appeal does not create a jurisdictional imperative.
> Even so, the deadline remains mandatory. . . .
> Because the appeal deadline is mandatory, because Tennial missed it, and because REI raised the issue in its motion to dismiss, the appeal must be dismissed as dilatory.

As in Tennial, FishDish missed the mandatory 14-day time limit in appealing the Claim Objection Order, and appellees' Partial Motion to Dismiss raised the issue. The district court denied that motion because "'An appeal [from final judgments,

-10-

orders, and decrees] shall be taken . . . in the time provided by Rule 8002,'" and the Claim Objection Order was not a final order. The bracketed limitation inserted by the court in quoting § 158(c)(2) was an error of law. The statute applies to appeals "under subsections (a) and (b)." Those appeals include appeals to district courts "from other interlocutory orders and decrees." § 158(a)(3). Rule 8002(a)(1) mandates filing a notice of appeal "within 14 days after entry of the judgment, order, or decree being appealed." Thus, it is not limited to *final* orders, and rightly so, because the need for expedited appellate processing in bankruptcy applies to appeals of interlocutory orders to the district court or to the BAP, as well as to final orders that can then be appealed to the court of appeals under § 158(d). Cf. In re Farmland Indus., Inc., 397 F.3d 647, 649-50 (8th Cir. 2005).

For this reason, we need not decide whether the Claim Objection Order was a "final judgment, order, [or] decree[]" under § 158(a)(1). See generally Ritzen Grp., Inc., v. Jackson Masonry, LLC, 140 S. Ct. 582 (2020); Bullard v. Blue Hill Banks, 575 U.S. 496 (2016). As it is undisputed that FishDish missed the mandatory 14-day time limit, the district court's order dismissing the appeal of the Claim Objection Order is affirmed.

## III. Equitable Dismissal Issues.

The district court declined to address the merits of FishDish's appeal, invoking the "doctrine of equitable mootness." The doctrine's name is misleading. A case is moot, that is, beyond a federal court's Article III jurisdiction, only if "it is impossible for a court to grant any effectual relief whatsoever." Mission Prod. Holdings, Inc. v. Tempnology, LLC, 139 S. Ct. 1652, 1660 (2019) (quotation omitted). "There is a big difference between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the outcome ('equitable mootness'). Using one word for two different concepts breeds confusion. Accordingly, we banish 'equitable mootness' from the

(local) lexicon." In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir.) (emphasis in original), cert. denied sub nom. UNARCO Bloomington Factory Workers v. UNR Indus., Inc., 513 U.S. 999 (1994). But the name lives on elsewhere.[4]

The equitable mootness doctrine is based on a recognition that "even when the moving party is not entitled to dismissal on Article III grounds, common sense or equitable considerations may justify a decision not to decide a case on the merits." In re Manges, 29 F.3d 1034, 1039 (5th Cir. 1994) (quotation omitted; cleaned up), cert. denied sub nom. Manges v. Seattle-First Nat. Bank, 513 U.S. 1152 (1995). Numerous Chapter 11 plan confirmation appeals have been dismissed "when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir. 1993). "If limited in scope and cautiously applied, this doctrine provides a vehicle whereby the court can prevent substantial harm to numerous parties." Cont'l Airlines, 91 F.3d at 559.

As with any equitable determination, a variety of factors may be relevant in a particular case. Our sister circuits have fashioned many different routes to answer the ultimate question.[5] Most have adopted either the two-factor analysis in In re Tribune Media Co., 799 F.3d 272, 277 (3d Cir. 2015), cert. denied sub nom. Aurelius Cap.

---

[4]FishDish contends the doctrine is constitutionally infirm, a contention some circuits have addressed but none has adopted. See In re One2One Comm'cns, LLC, 805 F.3d 428, 432-33 (3d Cir. 2015). FishDish did not make this argument to the district court, and we decline to consider it for the first time on appeal.

[5]There is a conflict among the circuits whether a district court decision to invoke equitable mootness is reviewed *de novo* or for abuse of discretion, an issue the parties debate on appeal. We apparently applied the *de novo* standard of review in In re President Casinos, 409 F. App'x at 31, a non-binding opinion. Given our decision that a remand is required, we need not decide this issue.

Mgmt., L.P. v. Tribune Media Co., 136 S. Ct. 1459 (2016), or a variation of the five-factor analysis adopted by the Eighth Circuit BAP in In re Williams, 256 B.R. 885, 896 n.11 (8th Cir. B.A.P. 2001). We decline the parties' invitation to adopt a specific multi-factor test. "The ultimate question to be decided is whether the Court can grant relief without undermining the plan and, thereby, affecting third parties." In re SI Restructuring, Inc., 542 F.3d 131, 136 (5th Cir. 2008). The most important factors are whether the confirmed plan has been substantially consummated and, if so, what effects reversal of the plan would likely have on third parties." Paige, 584 F.3d at 1339. Whether appellant sought or obtained a stay pending appeal is relevant but not determinative. See, e.g., Manges, 29 F.3d at 1039-40.

The equitable mootness doctrine as frequently applied has been thoughtfully criticized by many circuit judges. Perhaps the most thorough survey of the subject is the concurring opinion of Third Circuit Judge Cheryl Krause in In re One2One, 805 F.3d at 438-54, where the Third Circuit reversed the district court's equitable mootness dismissal and remanded for consideration of a bankruptcy appeal on the merits. After discussing at length issues regarding the judge-made doctrine's legitimacy, Judge Krause turned to the doctrine's efficacy, id. at 446-47:

> The doctrine was intended to promote finality, but it has proven far more likely to promote uncertainty and delay. Ironically . . . a motion to dismiss an appeal as equitably moot has become "part of the Plan." Proponents of reorganization plans now rush to implement them so they may avail themselves of an equitable mootness defense, much like Appellees did here. Rather than litigate the merits of an appeal, parties then litigate equitable mootness. And even if an appeal is dismissed as equitably moot by a district court, that dismissal is appealed to our Court, often resulting, in turn, in a remand and further proceedings.

\* \* \* \* \*

-13-

Even if we were affirming the District Court's finding of equitable mootness, there would not have been finality until this point . . . . Without the equitable mootness doctrine, on the other hand, the District Court would have ruled on the merits long ago.

The record on appeal suggests that the Chapter 11 proceedings in this case may have followed that pattern, yet the district court made no such inquiry. Of the $12 million paid under the Plan to creditors, presumably from the $13.5 million in funding provided by Alder, one half was paid to Broadmoor, and Alder Aqua as plan sponsor assumed management of the reorganized Debtors. These appellees are not third parties that the equitable mootness doctrine is intended to protect. Moreover, the only transfer that did not take place was Alder Aqua's commitment to invest substantial working capital. If that did not take place because the reorganized Debtors were preparing for a quick asset sale instead of resuming operations, the case takes on the look of the type of Chapter 11 plan that Judge Krause defined as one needing review on the merits by an Article III appellate court. And if the confirmed plan must be set aside on the merits, the district court may be able to fashion effective relief for those whose rights were impaired by the plan even if the business assets have been sold to a third party purchaser relying on the confirmed plan, such as disgorgement of the proceeds. We do not assume how these factual inquiries may be resolved. We decide only that the inquiry must be made.

The panel in One2One was bound to apply the equitable mootness doctrine as adopted by the Third Circuit's 7-6 en banc decision in Continental Airlines. Writing on a clean Eighth Circuit slate, we conclude that an inquiry into these issues is required before equitable mootness may be invoked in this case. This means that, on remand, the district court must make at least a preliminary review of the merits of FishDish's appeal to determine the strength of FishDish's claims, the amount of time that would likely be required to resolve the merits of those claims on an expedited basis, and the equitable remedies available -- including possible dismissal -- to avoid

-14-

undermining the plan and thereby harming *third parties*.  See Abengoa Bioenergy Biomass of Kan., LLC, 958 F.3d 949, 960 (10th Cir. 2020); In re Charter Commc'ns Inc., 691 F.3d 476, 482 (2d Cir. 2012), cert. denied sub nom Law Debenture Tr. Co. v. Charter Commc'ns, Inc., 569 U.S. 968 (2013).[6]

"In many cases," Judge Krause observed, "district courts may conclude that all or substantially all of the relief requested is feasible despite the plan's consumation."  One2One, 805 F.3d at 450; see Paige, 584 F.3d at 1339; SI Restructuring, 542 F.3d at 136 (appellants "do not seek any return of money . . . from third party creditors"); In re Envirodyne Inds., Inc., 29 F.3d 301, 304 (7th Cir. 1994). A "quick look at the merits of an appellant's challenge" is also important, Judge Krause urged, because "[m]erits review is particularly important for complex questions, like whether a plan comports with the Bankruptcy Code's cram down provisions, an issue that often cries out for appellate review . . . or claims involving conflicts of interest or preferential treatment that go to the very integrity of the bankruptcy process."  805 F.3d at 454 (cleaned up).  We agree.  Those are precisely the kinds of issues FishDish raises in this appeal.

In resolving a different but somewhat analogous issue, the Supreme Court recently held that "allowing Article I adjudicators to decide claims submitted to them by consent does not offend the separation of powers *so long as Article III courts retain supervisory authority over the process*."  Wellness Int'l Network, Ltd. v.

---

[6]For example, in Manges, a Chapter 11 proceeding where the debtors' principal assets were a large Texas ranch and mineral rights under the ranch, the district court affirmed the bankruptcy court's confirmation of the principal creditors' proposed plan.  29 F.3d at 1036.  Debtors appealed, and the Fifth Circuit granted appellees' motion to dismiss based on equitable mootness because the relief sought by debtors was "nothing less than a wholesale annihilation of the Plan," and the ranch had been sold to third party purchasers.  Id. at 1043.

Sharif, 135 S. Ct. 1932, 1944 (2015) (emphasis added). When a district court (or a court of appeals reviewing a BAP decision) is asked to invoke equitable mootness to preclude a party whose rights have been impaired by a Chapter 11 confirmation order from obtaining supervisory review of the merits of the plan by an Article III court that has an "unflagging obligation" to exercise its appellate jurisdiction, the request should be granted only in extremely rare circumstances. "The presumptive position remains that federal courts should hear and decide on the merits cases properly before them." Semcrude, 728 F.3d at 326. If equitable mootness instead becomes the rule of appellate bankruptcy jurisprudence, rather than an exception to the Article III-based rule that jurisdiction should be exercised, we predict the Supreme Court, having up to now denied petitions for certiorari to review the doctrine, will step in and severely curtail -- perhaps even abolish -- its use, just as the Court curtailed lower courts' excessive use of the "Rooker-Feldman doctrine" to avoid difficult claim and issue preclusion analysis in Exxon Mobil Corp. v. Saudi Basic Indus., Corp., 544 U.S. 280, 283-84 (2005).

## IV. Conclusion.

In summary, we affirm the decision of the district court dismissing FishDish's appeal of the Claim Objection Order. We reverse and remand for reconsideration the district court's dismissal of FishDish's appeal of the Plan Confirmation Order on the ground of equitable mootness. We conclude that appellees' contention that FishDish lacks bankruptcy case standing to appeal because it is not a "person aggrieved," see Opportunity Fin., LLC, v. Kelley, 822 F.3d 451, 457-58 (8th Cir. 2016), should not be decided on this record. Accordingly, we remand the case to the district court for further proceedings not inconsistent with this opinion.

_____