*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0201p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————————

In re: UNITED PRODUCERS, INC.,

　　　　　　　　　　　　　　　　*Debtor.*

———————————————————————

CURREYS OF NEBRASKA, INC., GERALD EGGERLING,
JAMES EGGERLING, MARCELLA EGGERLING, NANCY
EGGERLING, EGGERLING FARMS, INC., G.E. CATTLE
CO., INC., HARRY HAYES, DIANE KUCHTA, RICK
KUCHTA, KUCHTA FARMS, INC., RANDY OERTWICH,
PRODUCERS LIVESTOCK CREDIT CORP., R L
FINANCIAL, INC.,

　　　　　　　　　　　　　　　*Appellants,*

　　　*v.*

UNITED PRODUCERS, INC.,

　　　　　　　　　　　　　　　*Appellee.*

No. 06-4429

Appeal from the Sixth Circuit
Bankruptcy Appellate Panel.
No. 05-55272—Charles M. Caldwell, Bankruptcy Judge.

Argued: November 30, 2007

Decided and Filed: May 28, 2008

Before: KENNEDY, MARTIN, and CLAY, Circuit Judges.

———————————————

**COUNSEL**

**ARGUED:** David A. Domina, DOMINA LAW GROUP, Omaha, Nebraska, for Appellants. Philip F. Downey, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee. **ON BRIEF:** David A. Domina, DOMINA LAW GROUP, Omaha, Nebraska, Elias T. Xenos, Troy, Michigan, for Appellants. Philip F. Downey, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee.

　　　CLAY, J., delivered the opinion of the court, in which MARTIN, J., joined. KENNEDY, J. (pp. 9-10), delivered a separate opinion concurring in the judgment.

---

**OPINION**

---

CLAY, Circuit Judge.   Creditors Curreys of Nebraska, Inc., Gerald Eggerling, James Eggerling, Marcella Eggerling, Nancy Eggerling, Eggerling Farms, Inc., G.E. Cattle Co., Inc., Harry Hayes, Diane Kuchta, Rick Kuchta, Kuchta Farms, Inc., Randy Oertwich, Producers Livestock Credit Corp, and R L Financial, Inc. appeal the decision of the Bankruptcy Appellate Panel granting Debtor United Producer's motion to dismiss Creditors' appeal of the bankruptcy court's plan confirmation orders.   For the reasons stated below, this Court **AFFIRMS** the decision of the Bankruptcy Appellate Panel.

**BACKGROUND**

Debtor United Producers, Inc. ("United Producers") is an agricultural cooperative that provides financing to farmers through its subsidiary Producers Credit Corp. ("PCC").   Creditors Curreys of Nebraska, Inc., Gerald Eggerling, James Eggerling, Marcella Eggerling, Nancy Eggerling, Eggerling Farms, Inc., G.E. Cattle Co., Inc., Harry Hayes, Diane Kuchta, Rick Kuchta, Kuchta Farms, Inc., Randy Oertwich, Producers Livestock Credit Corp, and R L Financial, Inc. ("Creditors") are former investors in United Producers.   United Producers and PCC filed for Chapter 11 bankruptcy relief on April 1, 2005 after Creditors were awarded over $17 million in damages for United Producers' breach of contract, fraud, conversion and Packers and Stockyards Act violations regarding cattle marketing.   United Producers and PCC created a joint amended plan of reorganization that provided for the cancellation of ownership interests and the issuance of new interests and stock after the plan's confirmation.   Under the reorganization plan, Creditors would receive only a fraction of the judgments owed to them by United Producers and PCC.   One of Creditors' central objections to the plan was that it left management in place despite management's pre-petition misconduct.   Creditors claimed that this plan provision did not protect the interest of creditors and equity security holders and was against public policy.   Creditors also claimed that the plan was not proposed in good faith.

The bankruptcy court held a confirmation hearing on September 28 and 29, 2005.   On September 30, 2005, the court entered an order finding that the amended plan met all the confirmation standards of the Bankruptcy Code and directing the submission of a separate confirmation order.   The court subsequently confirmed the amended plan on October 6, 2005. Creditors timely appealed the September 30 and October 6, 2005 orders to the Bankruptcy Appellate Panel of the Sixth Circuit but did not seek a stay of the confirmation order.

On November 21, 2005, United Producers and PCC filed a motion to dismiss Creditors' appeal as equitably moot because the plan of reorganization had been substantially consummated and the relief sought on appeal would be detrimental to third parties not before the court and to the success of the plan.   The motion was accompanied by a memorandum of law and the affidavit of Dennis Bolling, president and chief executive officer of both United Producers and PCC, describing the post-confirmation transactions of the companies.   Because Creditors disputed the evidence contained in the affidavit, the Bankruptcy Appellate Panel remanded the matter to the bankruptcy court to determine whether the plan had been substantially consummated and the extent to which third parties relied upon the confirmed plan.

The bankruptcy court oversaw discovery and conducted an evidentiary hearing on June 29, 2006 at which Dennis Bolling was the only witness.   At the hearing Creditors conceded that the plan was substantially consummated.   Based upon the evidence presented, the bankruptcy court issued supplemental findings of fact and conclusions of law regarding substantial consummation and third-

party reliance upon the confirmed plan. The bankruptcy court found that the plan was substantially consummated and that innocent third parties would be adversely affected if the plan were to be vacated due to Creditors' appeal. In support of these conclusions, the bankruptcy court listed thirty findings of fact detailing the extent to which the reorganization had progressed and the possible consequences of the plan's vacation for third parties.

Following remand the Bankruptcy Appellate Panel granted United Producer and PCC's motion to dismiss the appeal as equitably moot. Relying upon the bankruptcy court's findings of fact, the Bankruptcy Appellate Panel concluded that the appeal should be dismissed as equitably moot because the plan had been substantially consummated and vacating the plan as a result of a successful appeal would harm innocent third parties who relied upon the confirmed plan. Creditors filed a timely appeal from the Bankruptcy Appellate Panel's October 6, 2006 judgment.

## DISCUSSION

### A.     Standard of Review

This court independently reviews a decision of the bankruptcy court that has been appealed to the Bankruptcy Appellate Panel. *Curry v. Curry (In re Curry)*, 509 F.3d 735, 735 (6th Cir. 2007). The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004). While these general principles regarding review of bankruptcy court decisions are well established, the parties disagree regarding the standard of review to be applied to the Bankruptcy Appellate Panel's equitable mootness determination.

As with many aspects of the equitable mootness inquiry, the case law is sparse regarding the standard of review to be applied. The Third Circuit reviews equitable mootness decisions under an abuse of discretion standard because such a decision "involves a discretionary balancing of equitable and prudential factors rather than the limits of the federal courts' authority under Article III." *In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996).[1] Such review of equitable mootness determinations is consistent with the standard of review applied to other equitable determinations made by lower courts. *See In re Behlke*, 358 F.3d at 433 ("[T]he bankruptcy court's equitable determinations are reviewed for an abuse of discretion." (citation omitted)). However, the dissent in *In re Continental Airlines* espoused the opposite view, arguing that a district court's equitable mootness determination should be reviewed *de novo* because the district court acts as an appellate court in bankruptcy cases. *In re Continental Airlines*, 91 F.3d at 568 n.4 (Alito, J., dissenting). Such a standard of review would be appropriate because the court of appeals is "in just as good a position to make this determination as was the district court." *Id.*

The standard of review for equitable mootness decisions proposed by the dissent in *Continental Airlines* is more consistent with this Circuit's precedent than is the *Continental Airlines* majority's position. Although only clearly setting forth a *de novo* standard of review for equitable mootness determinations in an unpublished case, *Unofficial Committee of Co-Defendants v. Eagle-Picher Indus., Inc. (In re Eagle Picher Indus., Inc.)*, 172 F.3d 48, 1998 WL 939869, at \*3 (6th Cir. 1998) (unpublished table decision), this Court has reviewed determinations of equitable mootness *de novo*. *See, e.g. Bank of Montreal v. Official Comm. of Unsecured Creditors (In re American HomePatient, Inc.)*, 420 F.3d 559, 564-65 (6th Cir. 2005). Such a standard of review is consistent

---

[1] The equitable mootness determination at issue in *Continental Airlines* was made by a district court and not a Bankruptcy Appellate Panel. This distinction makes no difference to the applicability of the reasoning of *Continental Airlines* to the instant case because the judgments of Bankruptcy Appellate Panels are equivalent to the judgments of district courts. *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 663 n.3 (6th Cir. 2004) ("[T]he opinion of a Bankruptcy Appellate Panel . . . is equivalent to review by a district court . . ."). *See* 28 U.S.C. § 158.

with this Court's plenary review of the decisions of a lower court exercising its appellate jurisdiction. *See In re Big Rivers Elec. Corp.*, 355 F.3d 415, 428-29 (6th Cir. 2004) (noting that review for abuse of discretion is appropriate when a district court is exercising its original jurisdiction and not when it is exercising its appellate jurisdiction over a bankruptcy case). *See also United States v. GWI PCS 1 Inc. (In re GWI PCS 1 Inc.)*, 230 F.3d 788, 799-800 (5th Cir. 2000) (holding that a district court's dismissal of an appeal as equitably moot is reviewed *de novo*); *First Union Real Estate Equity & Mortgage Invs. v. Club Assocs. (In re Club Assocs.)*, 956 F.2d 1065, 1069 (11th Cir. 1992) (reviewing *de novo* equitable mootness determination by a district court). As a result, we review the Bankruptcy Appellate Panel's equitable mootness determination *de novo*.

## B.     Analysis

The equitable mootness doctrine is applied in appeals from bankruptcy confirmations in order to protect parties relying upon the successful confirmation of a bankruptcy plan from a drastic change after appeal. *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1225 (6th Cir.1995) ("[A] plan of reorganization, once implemented, should be disturbed only for compelling reasons."). Unlike mootness in the constitutional sense, equitable mootness does not follow from Article III standing principles but is an equitable doctrine applied to protect parties' settled expectations and the ability of a debtor to emerge from bankruptcy. *United Steelworkers v. Ormet Corp. (In re Ormet)*, 2005 WL 2000704, at *4 (S.D. Ohio 2005). *See Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002) ("[T]he doctrine of equitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable."). Although bankruptcy courts have always had broad equitable powers, the equitable mootness doctrine has only been formally recognized within the last twenty years. *In re American HomePatient*, 420 F.3d at 563 (discussing Sixth Circuit cases that have applied the equitable mootness doctrine).

Issues relating to equitable mootness have rarely been decided in the Sixth Circuit. Early cases treated equitable mootness similarly to traditional Article III mootness despite incorporating some equitable factors. *In re Eagle Picher Indus., Inc.*, 1998 WL 939869 (discussing equitable mootness in context of constitutional mootness); *Bennett v. Veale*, 60 F.3d 828 (6th Cir. 1995) (same). The leading Sixth Circuit case on equitable mootness issues is *In re American HomePatient* in which we adopted the Fifth Circuit's three-part test for determining whether an appeal from the confirmation of a bankruptcy plan should be dismissed as equitably moot. *In re American HomePatient*, 420 F.3d at 563-64. In making this determination, a court must weigh three factors:[2] "(1) whether a stay has been obtained; (2) whether the plan has been 'substantially consummated'; and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *City of Covington*, 71 F.3d at 1225 (citing *Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034, 1039 (5th Cir. 1994)).

### 1. Existence of a Stay

When an appellant does not obtain a stay of the implementation of a confirmation plan, the debtor will normally implement the plan and reliance interests will be created. Thus, the failure to obtain a stay will count against the appellant in determining whether an appeal should be denied on equitable mootness grounds. *In re Manges*, 29 F.3d at 1040. "The failure to seek a stay, however, is not necessarily fatal to the appellant's ability to proceed." *City of Covington*, 71 F.3d at 1225-26.

---

[2] Creditor attempts to add a fourth factor to this Court's equitable mootness analysis, namely "the public policy for affording finality to bankruptcy judgments." (Cr. Br. at 29.) This Court has previously adopted a three-factor analysis, and this panel will not modify this precedent absent an intervening Supreme Court decision. Sixth Cir. R. 206(c). *Meeks v. Illinois Cent. Gulf R.R.*, 738 F.2d 748, 751 (6th Cir. 1984).

It is undisputed that Creditors did not seek a stay in this case.  Although Creditors attribute this omission to their poverty which was caused by Debtor's actions, the reason for the absence of a stay is immaterial to the equitable mootness analysis.  As we have stated, "[a] stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization.  And it is the reliance interests engendered by the plan, coupled with the difficulty of reversing the critical transactions, that counsels against attempts to unwind things on appeal." *City of Covington*, 71 F.3d at 1226 (quoting *In re UNR Indus.*, 20 F.3d 766, 769-70 (7th Cir. 1994)).  Thus, Creditors failure to seek a stay weighs in favor of Debtors.

### 2.  Substantial Consummation

"Substantial consummation" is a statutory term used to determine whether a bankruptcy court may modify or amend a reorganization plan.  11 U.S.C.A. § 1127 ("The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan . . .").  The Bankruptcy Code defines substantial consummation as:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).  This standard has been adopted in the equitable mootness analysis to determine the extent to which the plan has progressed.  *In re Manges*, 29 F.3d at 1040-41.  If a plan has been substantially consummated there is a greater likelihood that overturning the confirmation plan will have adverse effects on the success of the plan and on third parties.

Although Creditors did not dispute the fact that the plan has been substantially consummated at the Bankruptcy Appellate Panel, they qualify their concession before this Court by contending that the plan can only be deemed substantially consummated because Debtor continues as it did pre-bankruptcy and that the deficient plan requires no more than maintenance of the status quo.[3] Creditors' arguments, which are more relevant to the merits of their claim than to the equitable mootness determination, are forestalled by the factual findings of the bankruptcy court.  As the Bankruptcy Appellate Panel summarized, the bankruptcy court found that Debtor had taken numerous steps to effectuate the reorganization plan:

> These actions include the termination and issuance of new membership interests in UPI; the collection by UPI of $495,000 in new membership fees and $400,000 in new per unit retains; the liquidation and dissolution of the related entity UPHC, LLC, which permitted the transfer to UPI of 14 parcels of real property and capital stock; the cancellation of 208 shares of PCC's preferred stock held by Southern States Cooperative, Inc.; the closing and funding of exit financing of CoBank in the amount of $75 million, secured by UPI's new stock in PCC and various mortgages, permitting the Appellees to pay off the debtor-in-possession loan and fund plan distributions; the settlement of a $5 million claim against the Appellees and final distribution on that claim; plan distribution to priority and general unsecured creditors which represented the distribution of approximately all of the remaining balance in the pool established to pay claims; and the sale by UPI of its West Plains, Missouri facility.

---

[3] However, Creditors also implicitly concede the issue of substantial consummation by stating in their brief that "[t]he only question is whether third-parties will be harmed if the Plan is vacated . . ."  (Cr. Br. 23.)

(J.A. 936-37 (internal quotations and alterations omitted).)  No evidence has been presented that these findings are clearly erroneous.[4]  Creditors' conclusory allegations that Debtor would have taken the same actions absent the confirmed reorganization plan are unsupported by any evidence in the record.

As Creditors have previously conceded, Debtor's actions demonstrate that the plan is substantially consummated.  Thus, this factor weighs in favor of Debtor.

### 3.  Rights of Third Parties and Success of the Plan

Even when a plan has been substantially consummated, it is "not necessarily . . . impossible or inequitable for an appellate court to grant effective relief." *Manges*, 29 F.3d at 1042-43.  The most important factor this Court must consider is "whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *In re American HomePatient*, 420 F.3d at 564.  "Determinations of mootness . . . require a case-by-case judgment regarding, the feasibility or futility of effective relief should a litigant prevail." *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147-48 (DC Cir. 1986).

As part of our analysis of the feasibility of granting relief, this Court considers the nature of the relief requested and whether it amounts to a piecemeal revision of the plan or a wholesale rewriting of it. *In re Manges*, 29 F.3d. at 1043 ("We must evaluate [actions taken pursuant to the Plan], many of which appear irreversible, against the backdrop of the relief sought– nothing less than a wholesale annihilation of the Plan.").  In *Guardian Savings & Loan Association v. Arbors of Houston Associates (In re Arbors of Houston Associates)*, 172 F.3d 47, 1999 WL 17649 (6th Cir. 1999) (unpublished table decision), we held that equitable mootness did not apply where the creditor contested the interpretation of a provision of a reorganization plan.  We found that the adoption of the creditor's interpretation "would not substantially upset the plan of reorganization itself.  The refinancing would go through and no other term of the reorganization would be affected." *In re Arbors of Houston Assocs.*, 1999 WL 17649, at *3.  We have also declined to declare an appeal equitably moot when there is uncontested evidence that the creditor's requested relief would not require abandonment of the plan.  In *In re American HomePatient* we determined that despite the substantial consummation of the plan, the lenders' appeal was not equitably moot. *In re American HomePatient*, 420 F.3d at 565.  In light of the debtor's failure to present evidence specifically rebutting the lenders' arguments, we determined that the lenders presented a plausible argument that the implementation of their suggested changes to the confirmation plan would not require any of the actions undertaken pursuant to the plan to be reversed. *Id.* at 564-65.

In this case, Creditors offer little detail regarding the requested revision of the confirmation plan. Creditors claim that their requested relief is limited and that they are asking that this Court vacate only the portion of the plan that requires management to remain in place.  (Cr. Br. 32.) However, Creditors also ask that they be allowed to propose an entirely new reorganization plan. (Cr. Br. 29.)  They claim that their plan would "treat every creditor identically with the approved plan, except that they will change the debtors' business model, by: (a) modernizing it; (b) replacing expensive management, which answers to no one in the current context; (c) improving profitability; and (d) making some payments toward Appellants' own judgments." (Cr. Br. 29.)  Creditors present the unsupported assertion that no third parties will be harmed because the reorganization

---

[4] The record on appeal contains no transcript of the hearing upon which the bankruptcy court based its supplemental findings.  As a result, Creditors may not challenge the bankruptcy court's findings of fact. Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion."). *See Knowles Building Co. v. Zinni (In re Zinni)*, 261 B.R. 196, 202 (BAP 6th Cir. 2001) (holding that the failure to include a transcript while not fatal to appellants case could "hinder its ability to argue on appeal that the bankruptcy court made an unsupported finding of fact or conclusion of law").

plan they would propose would benefit Debtor's business. (Cr. Br. 29.) Creditors misapprehend the focus of the equitable mootness inquiry. They claim that because their alternative plan would be more successful than the confirmed plan, their appeal should not be dismissed as equitably moot. However, the analysis of the third factor of the equitable mootness inquiry does not look at the merits of the Creditors' alternative plan as if it were being proposed on a blank slate. This Court must determine what the consequences of reversal of the confirmed plan would be for the success of the reorganization and for interests of third parties who have relied upon the confirmed plan.

The bankruptcy court found that reversal of the confirmation order would threaten the success of Debtor's reorganization in part because of the effect a reversal would have on the financing of the reorganization. Debtor's reorganization was financed in large part by CoBank, ACB ("CoBank"), one of Debtor's pre-bankruptcy creditors. The loan agreement between Debtor and CoBank made confirmation of Debtor's reorganization plan a condition precedent to the disbursement of loan funds. Pursuant to the agreement, Debtor would be in default on the loan if it failed to comply with the bankruptcy court's confirmation order, suspended business operations, made changes in management, or made any adverse change as determined by CoBank. Counsel for CoBank stated before the bankruptcy court that the reversal of the reorganization plan's confirmation would be considered a default upon Debtor's loan and would result in the bank halting continued financing. In addition, the specific relief requested by Creditors, a change in Debtor's management, would also be seen by CoBank as a default. The loss of CoBank's financing would not only negatively impact the success of the plan but would also jeopardize Debtor's ability to make loans to the 68,000 farmers who are its members and customers.

The bankruptcy court also noted the disruption to Debtor's continuing operations that would be caused by reversal of the confirmation order. Debtor would be required to halt payments for the livestock transactions it engages in on a daily basis or face the possibility of up to $9 million in checks being dishonored as a result of a return to bankruptcy. Debtor's delivery of livestock to packing customers would also be disrupted. The bankruptcy court found that such occurrences could lead to a loss of customer confidence in Debtor and negatively impact its successful emergence from bankruptcy.

The bankruptcy court also noted the legal uncertainty that would be created by a reversal of confirmation. Debtor has established new business relationships to operate an auction facility, service loans, and to make investments for farmers' associations. Debtor has also made distributions to creditors, made changes to its Articles of Incorporation, issued new stock and membership interests, sold real property, and received and issued releases. A reversal of confirmation would make uncertain the validity of such transactions.

This Court has decided that equitable mootness applied in a case similar to the case at bar due to the effect reversing a confirmation order would have on third parties. The *In re Eagle Picher Industries* Court dismissed the creditors' appeal on equitable mootness grounds after finding that no stay was issued and the plan was substantially consummated. We explained the basis of our decision as follows:

> To the extent that Debtors seek to reverse the substantially consummated Plan, we find that reversal is not possible or desirable. The Plan represents the culmination of seven years of litigation and negotiations among the various constituencies in Debtors' Chapter 11 cases. The existing common stock of Debtors has been canceled and new shares of common stock have been issued to the trust. Debtors have made distributions to thousands of creditors. Debtors have also entered into an unsecured credit facility valued at sixty million dollars with a new lender. New trade creditors have been dealing with Debtors as reorganized companies with the belief that confirmation of the Plan is fully effective. Reversal of the Confirmation Order as

sought by Co-Defendants would require the invalidation of thousands of good-faith transfers made pursuant to the Plan.

*In re Eagle Picher Indus.*, 1998 WL 939869, at *5. The amount of third party reliance upon the *In re Eagle Picher Industries* plan is similar to, if not less, than that of Debtor's plan. *See also Rochman v. Northeast Util. Serv. Group (In re Public Serv. Co.)*, 963 F.2d 469, 475 (1st Cir. 1992) (finding an appeal equitably moot where unraveling the plan "would work incalculable inequity to many thousands of innocent third parties who have extended credit, settled claims, relinquished collateral and transferred or acquired property in legitimate reliance on the unstayed order of confirmation").

Because the bankruptcy court's findings of fact establish that granting Creditors' requested relief would negatively affect the success of the plan and harm innocent third parties, this factor weighs in favor of Debtor.

## CONCLUSION

All three factors of the equitable mootness inquiry weigh in favor of dismissing Creditors' appeal as moot: Creditors did not seek a stay; the confirmed plan has been substantially consummated, and reversal of the plan would adversely impact third parties not before this court and the success of the plan. As a result, we **AFFIRM** the Bankruptcy Appellate Panel's dismissal of Creditors' appeal as equitably moot.

---

**CONCURRING IN THE JUDGMENT**

---

KENNEDY, Circuit Judge, concurring in judgment. Because I believe that it is unnecessary to decide the standard of review in this case, I respectfully concur in the judgment. The majority decides that we should conduct *de novo* review of the BAP's equitable mootness determination. This is the standard the creditor-appellants request in this case. Under their requested standard, however, we have determined that their claim fails. I believe, therefore, that we should assume a *de novo* standard, rather than decide what standard applies. The majority leaves the party aggrieved by this decision, the debtor-appellee, unable to appeal; since the debtor has won, it has no way to seek further review of our decision that a *de novo* standard of review should be employed. This alone, in my view, should warrant avoidance of the issue. Also counseling avoidance is the fact that four circuits have split on the standard of review to be applied, which could make this a case warranting further review should the debtor-appellee have been in a position to seek it.

I also believe that the standard of review in this case is a complicated question. First, this case is unlike other bankruptcy appeals from the BAP or a district court because that forum will be deciding the issue of equitable mootness for the first time. Generally, the BAP is reviewing the bankruptcy court's decision and not making an equitable determination in the first instance, as it does here. As best I can tell, this is the only type of case where the BAP will be deciding an issue for the first time. Given this, I believe that our general statements that we engage in *de novo* review of BAP decisions are not informative. Those general statements come from cases where we are conducting direct review of the bankruptcy court's decision, which is not present in this case because the first decision regarding equitable mootness was properly the BAP's.

There is also good reason to think an abuse of discretion standard of review should be applied to the BAP's equitable mootness determination. We generally review a forum's discretionary decisions not to exercise its authority under an abuse of discretion. For instance, while a district court may have the power to decide pendent state law claims, it continues to have discretion to decline jurisdiction over such claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). We then review a district court's decision to decline such jurisdiction under an abuse of discretion standard. *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001). The same is true for a district court's determination that it should refrain from exercising its authority based on the doctrine of laches. *See Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 493 (6th Cir. 2007).

The dissent in *Continental Airlines*, which advocates a *de novo* standard of review and is relied upon by the majority, seems to me to have missed the uniqueness of this situation. First, it should be noted that the primary disagreement in the case was whether equitable mootness was a valid doctrine under which a court could refrain from exercising its authority and whether, if valid, it was as expansive as the majority in the case held. *See, e.g.*, *Continental Airlines*, 91 F.3d 567-68 (Alito, J., dissenting). The dissent's thoughts on the standard of review were relegated to a footnote. *Id.* at 568 n.4. In that footnote, the dissent stated that the court of appeals generally conducted *de novo* review of district court bankruptcy decisions because the district court is functioning as an intermediate appellate court. *Id.* This misses the point that this situation is the only one, as far as I can tell, where the intermediate court will be deciding an equitable issue for the first time and is the proper body to decide that issue for the first time.

The dissent's only other reason for using a *de novo* standard of review is equally unpersuasive to me. The dissent believed a heightened standard of review proper because the court of appeals was in as good of a position as the district court to make an equitable mootness

determination. *Id.* While this may be true, this is not the only element considered when determining the standard of review to be applied, and, indeed, is likely one of the weakest elements to be considered.[1] After a tribunal has found facts, we are arguably in as good of a position as it is to weigh those facts against one another. We do not, however, generally re-weigh factors when reviewing a discretionary, equitable decision. *See, e.g.*, *Wonderland Shopping Ctr. Venture Ltd. v. CDC Mortgage Capital, Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001) (noting that the denial of a preliminary injunction is reviewed for an abuse of discretion).[2]

Because I believe that we should not decide what standard of review applies in this case, I respectfully concur in the judgment.

---

[1] Indeed, it may well be that the BAP is in a better position to decide this issue than we are. The BAP is composed of seasoned bankruptcy judges who have extensive experience in the management of bankruptcy cases and therefore may be better at determining if unwinding a confirmed and implemented plan will have severe enough consequences that should cause an appellate court to stay its hand.

[2] One unique and unexplored factor in this case is the potential for a double determination of equitable mootness. If, under any standard of review, the BAP was incorrect and the appeal was not equitably moot, I think that we may have to determine whether the case has become equitably moot by the time the appeal is before us and therefore whether we should exercise our authority over the case. Just because we may have to make our own determination, however, does not mean that we should disregard the BAP's decision on the issue. The first step to the case is review. If upon review it is determined that the BAP's decision was correct, we need not reach the question of whether we should exercise our authority and upset the status quo in the case.