DISSENT
KAREN NELSON MOORE, Circuit Judge,
dissenting.
Judicial restraint is an undeniable virtue, but its pursuit should not lead to judicial abdication. This case illustrates how a decision not to decide a case can be the most consequential decision of all.
As every first-year law student learns, it is our job as judges “to say what the law is.” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). With this power, however, comes great responsibility. Cf. Kimble v. Marvel Entm’t, LLC, — U.S. -, 135 S.Ct. 2401, 2415, 192 L.Ed.2d 463 (2015). At times, we must recognize our own limits and decline to decide matters that are properly left to another day or a more concrete dispute, e.g., North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (prohibition on deciding moot cases); Muskrat v. United States, 219 U.S. 346, 354, 357-58, 31 S.Ct. 250, 55 L.Ed. 246 (1911) (prohibition on giving advisory opinions), or avoid those issues that fall within the province or expertise of another branch of government, see Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (courts should avoid deciding “political questions”). Often, however, we must decide the hard cases—even when we would rather not, and even if the legally correct decision results in an outcome that we dislike.
The current trend at the Supreme Court is toward a greater recognition of our “virtually unflagging obligation ... to exercise the jurisdiction given [us].” Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (first alteration in original) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Where once we relied on “prudential” doctrines that used jurisdictional jargon to justify deciding not to decide a case, e.g., Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11-12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004), the Supreme Court is now skeptical of such self-imposed straitjackets, see Lexmark Int’l, Inc. v. Static Control Components, Inc., — U.S. -, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014). At bottom, this is a recognition that it is rarely our job as judges to decline to exercise our judicial power in a case that is otherwise within our jurisdiction. “Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because ‘prudence’ dictates.” Lexmark, 134 S.Ct. at 1388 (internal citation omitted). Deciding not to decide can thus be a form of judicial overreach, not restraint.' Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) (‘We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution”); see also New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (“Underlying these assertions is the undisputed constitutional principle that Congress, and not the Judi *806 ciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds.”).
In its zeal to avoid the merits of this case, the - Majority- extends an already questionable prudential doctrine to a context in which it-has no place. This is not only a delegation of our “virtually unflagging obligation” to decide cases within our jurisdiction, Quackenbush, 517 U.S. at 716, 116 S.Ct. 1712 (quoting Colorado River, 424 U.S. at 821, 96 S.Ct. 1236), but it has real-world consequences for the litigants before us—retirees who spent their lives serving the people of Detroit through boom and bust, and who feel that the City’s bankruptcy was resolved through a game of musical chairs in which they were left without a seat. These litigants believe that their rights were violated by the agreement that resulted in the settlement of Detroit’s bankruptcy—the largest municipal bankruptcy in our nation’s history. By declining to review the bankruptcy court’s assessment of these claims, the district court and the Majority ensure that they will never be heard by an Article III judge. Although I do not doubt the expertise that a bankruptcy judge brings to a case of this magnitude and complexity, having one’s case decided by an Article III judge is no mere formality. The protections of Article III “help to ensure the integrity and independence of the Judiciary,” Wellness Int’l Network, Ltd. v. Sharif, — U.S.-, 135 S.Ct. 1932, 1938, 191 L.Ed.2d 911 (2015), and Article III supervision of bankruptcy judges is key to the constitutionality of the bankruptcy-court system that adjudicated the retirees’ claims, id. at 1946.
The doctrine that the Majority uses to avoid the retirees’ legal claims is “equitable mootness.” As applied here, equitable mootness suggests that the importance of adjudicating the retirees’ rights pales in comparison to the importance of protecting the expectations of lenders and others who have chosen to rely on Detroit’s bankruptcy plan before appellate challenges to it were resolved. I fear that using such a justification to brush aside the retirees’ legal claims will leave them with the impression that their rights do not matter. That the doctrine used to avoid their claims is a judicial invention with almost no legal basis only pours salt on the wound. Whatever the merits of the retirees’ claims, this is lamentable, and I respectfully dissent.
I.
The doctrine of equitable mootness hypothesizes that many will rely on a bankruptcy plan after’ it has been confirmed by a bankruptcy court, but before an appeal of that confirmation has been resolved. Equitable mootness suggests that protecting these reliance interests can be important enough that an appeal contesting the confirmation of a bankruptcy plan should not be heard. It is, as then-Judge Alito put it, a “curious doctrine,” which “permit[s] federal district courts and courts of appeals to refuse to entertain the merits of live bankruptcy appeals over which they indisputably possess statutory jurisdiction and in which they can plainly provide relief.” In re Continental Airlines, 91 F.3d 553, 567 (3d Cir. 1996) (en banc) (Alito, J., dissenting), cert. denied, 519 U.S. 1057, 117 S.Ct. 686, 136 L.Ed.2d 610 (1997). Despite the name, equitable mootness bears no relation to “mootness.” Indeed, in an equitably moot appeal, the relief sought is the opposite of moot—the consequences of granting it would be so great that they are deemed inequitable. Nor is equitable mootness the same as “statutory mootness,” which applies when certain provisions of the bankruptcy code specifically bar appeals from certain un-stayed bankruptcy- *807 court orders. See, e.g., In re Made in Detroit, Inc., 414 F.3d 576, 580-83 (6th Cir. 2005).
Although the doctrine of equitable mootness has been adopted by our circuit—and, I admit, every other circuit to consider its vitality—its legal foundations are shaky, at best. I recognize that our panel is bound to our precedent applying the doctrine, but the City of Detroit does not request a straightforward application of that precedent. Rather, the City asks us to extend the doctrine from its roots in Chapter 11 of the Bankruptcy Code to a case arising under the municipal-bankruptcy provisions of Chapter 9. The Majority agrees to do so, holding that the same need to protect reliance interests that motivated our adoption of the doctrine in Chapter 11 cases are present in Chapter 9 cases. That misses the point. Equitable mootness cannot apply every time that a district court’s decision engenders strong reliance interests; if that were the case, it could apply to every appeal we hear. Rather, there must be some legal basis for us to decline' to hear appeals that may upset such reliance interests in the first place. Although there is but a thin veneer of legal grounding for such a doctrine in Chapter 11 cases, this justification rubs off when the case is a Chapter 9 bankruptcy. I begin by analyzing in Part A the meager textual basis proffered for the equitable-mootness doctrine. I then turn in Part B to other concerns with the doctrine. In Part C, I explain why these concerns, along with the specific context of Chapter 9, suggest that we are neither bound nor able to hold that equitable mootness applies to Chapter 9 cases.
A. Equitable Mootness Is Not Justified by the Bankruptcy Code.
Our circuit’s decisions adopting equitable mootness provide little explanation of the legal basis for the doctrine, so I begin with an overview of the doctrine’s history. Equitable mootness was initially grounded in the 1976 version of Bankruptcy Rule 805, which had the same effect as current provisions of the Bankruptcy Code codified at 11 U.S.C. §§ 363(m) and 364(e):
Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal.
In re Roberts Farms, Inc., 652 F.2d 793, 796 (9th Cir. 1981) (quoting Fed. R. Bankr. P. 805 (1976)). In 1981, the Ninth Circuit suggested that this Rule embodied a broader policy that could be applied to bar appeals from an order confirming a bankruptcy plan of reorganization where certain “property transactions do not stand independently and apart from the plan of arrangement.” Id. at 797. Although this decision was later cited to support the denial of appellate review of reorganization plans without analysis of whether they were intertwined with property transactions that could not be disputed as a matter of statute, Roberts Farms is best interpreted as a limited decision that stands for the proposition that appeals of orders confirming reorganization plans may “not be entertained [when] no relief [is] practicable as a result of the many post-confirmation transactions that were irreversible due to this provision of former Rule 805.” Continental Airlines, 91 F.3d at 569 (Alito, J., dissenting).
Despite this seemingly clear way to cabin Roberts Farms, the Seventh Circuit subsequently constructed a fuller explanation for the budding doctrine of equitable *808 mootness, relying on “[s]everal provisions of the Bankruptcy Code ... [that] provide that courts should keep their hands off consummated transactions.” In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir.), cert. denied, 513 U.S. 999, 115 S.Ct. 509, 130 L.Ed.2d 416 (1994). First, it pointed to 11 U.S.C. § 363(m), which “says that the reversal of an order authorizing the sale or lease of property of an estate ‘does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal.’ ” Id. (quoting 11 U.S.C. § 363(m)). Second, the Seventh Circuit pointed to 11 U.S.C. § 1127(b), which “dramatically curtails the power of a bankruptcy court to modify a plan of reorganization after its confirmation and ‘substantial consummation’ ”—although the Seventh Circuit acknowledged that § 1127(b) “does not place any limit on the power of the court of appeals.” Id. (quoting 11 U.S.C. § 1127(b)). From these two provisions, the Seventh Circuit divined a policy in favor of “preserving interests bought and paid for in reliance on judicial decisions, and avoiding the pains that attend any effort to unscramble an egg.” Id. This policy, the Seventh Circuit held, was “so plain and so compelling that courts fill the interstices of the Code with the same approach.” Id.
The doctrine quickly made its way to our circuit, although we have never examined the legal basis for it. In an unpublished decision in 1995, we applied what seemed to be equitable mootness, holding that a bankruptcy appeal was moot because “[i]t would be a hardship and unfair to all parties to go back [on the reorganization plan],” and equating this to a finding that “this court is without the ability to provide the relief requested.” Bennett v. Veale, Nos. 93-3016, 93-4180, 1995 WL 385147, at *2-3 (6th Cir. June 27, 1995). Later that year, we were confronted with an equitable-mootness argument, but concluded that “[t]he record in this case is inadequate to sustain the [defendant’s] equitable estoppel argument.” City of Covington v. Covington Landing Ltd. P’ship, 71 F.3d 1221, 1226 (6th Cir. 1995). We nevertheless suggested that equitable mootness applied to Chapter 11 appeals. Id. at 1225 (“A growing number of cases outside this circuit recognize that ‘a plan of reorganization, once implemented, should be. disturbed only for compelling reasons.’” (quoting UNR Indus., 20 F.3d at 769)). We applied the doctrine in 1998, relying on Bennett, City of Covington, and the Seventh Circuit’s decision in UNR. See In re Eagle Picher Indus., Inc., Nos. 96-4309, 97-4260, 1998 WL 939869, at *4-5 & nn.7-8 (6th Cir. Dec. 21, 1998).[1] In recent years, the doctrine has become embedded in our case law, although we have yet to explore its legal basis in any detail, relying instead on our decision in City of Covington. See In re Schwartz, 636 Fed.Appx. 673, 675-77 (6th Cir. 2016); In re United Producers, Inc., 526 F.3d 942, 947 (6th Cir. 2008); In re Am. HomePatient, Inc., 420 F.3d 559, 563 (6th Cir. 2005), cert. denied, 549 U.S. 942, 127 S.Ct. 55, 166 L.Ed.2d 251 (2006).
Other circuits have adopted the doctrine with similarly minimal exploration of. its legal basis. See In re Semcrude, L.P., 728 F.3d 314, 317 (3d Cir. 2013) (“Courts have rarely analyzed the source of them authority to refuse to hear an appeal on equitable mootness grounds.”). Indeed, “[although the equitable mootness doctrine is era- *809 braced in every circuit, the rationale underlying the doctrine is unsettled at best.” Ryan M. Murphy, Equitable Mootness Should Be Used as a Scalpel Rather than an Axe in Bankruptcy Appeals, 19 J. Bankr. L. & Pract. 1 Art. 2 (2010). At a minimum, as the Solicitor General wrote in unsuccessfully seeking certiorari on the issue, the doctrine “is a relatively recent judicial construct of questionable foundation.” Pet’n for a Writ of Certiorari, United States v. GWI PCS 1, Inc., No. 00-1621, 2001 WL 34124814, at *22 (Apr. 2001). Only a handful of decisions have analyzed its basis, and the Seventh Circuit’s statutory-gap-filling rationale from UNR remains “[t]he most plausible basis.” In re Sem-crude, 728 F.3d at 317.
Given the dearth of explanation of the legal basis for the equitable-mootness doctrine, criticism has begun to mount. This criticism focuses on the doctrine’s questionable textual moorings: “Although the Bankruptcy Code forbids appellate review of certain un-stayed orders and restricts post-confirmation plan modifications, it does not expressly limit appellate review of plan confirmation orders.” In re Pacific Lumber Co., 584 F.3d 229, 240 (5th Cir. 2009) (footnotes omitted). Judge Krause recently put it best: “[A]s courts and litigants ... have struggled to identify a statutory basis for the doctrine, it has become painfully apparent that there is none.” In re One2One Commc’ns, LLC, 805 F.3d 428, 438 (3d Cir. 2015) (Krause, J., concurring).
The Seventh Circuit’s UNR decision does not supply a persuasive explanation of the doctrine’s source. The provisions on which UNR was based are specifically targeted, and do not apply to orders confirming bankruptcy reorganization plans. 11 U.S.C. § 363(m) provides a basis for finding statutory mootness when an appeal is from an un-stayed order authorizing the bankruptcy trustee to. sell or lease property from the debtor’s estate. See Made in Detroit, 414 F.3d at 580-83. And 11 U.S.C. § 1127(b) merely provides that “[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of .such plan,” but says nothing about the authority of the distript or circuit court to modify a plan due to a legal infirmity in its confirmation. See OneSOne, 805 F.3d at 443-44 (Krause, J., concurring) (“Section 1127(b) provides even less support for equitable mootness, as it only restricts a party’s ability to modify a plan before confirmation; it says nothing about the powers of bankruptcy courts or appellate courts.”). If anything, the existence of such narrow provisions withholding review or precluding modification in certain circumstances suggests “[ujnder the maxim of expresio unius est exclusio alterius,” that “Congress’s express inclusion of two bankruptcy-law exceptions to appellate review indicates an intent to preclude recognition of others.” Pet’n for a Writ of Certiorari, United States v. GWI PCS 1, Inc., No. 00-1621, 2001 WL 34124814, at *23 (Apr. 2001); see also One20ne, 805 F.3d at 444 (Krause, J., concurring) (“Because Congress specified certain orders that cannot be disturbed on appeal absent a stay, basic canons of statutory construction compel us to presume that Congress did not intend for other orders to be immune from appeal.”).
Not. only is it a stretch to find textual support for equitable mootness, but statutory provisions regarding bankruptcy appeals arguably preclude the doctrine. Congress has plainly authorized .appeals' from confirmation orders, 28 U.S.C. §§ 157-158, so UNR’s federal-common-law theory suggests that federal courts may refuse to hear appeals that are plainly permitted by statute solely because 11 U.S.C. §§ 363(m) and 1127(b) imply a general policy against *810 upsetting reliance interests. This is far from the usual situation in which a federal court is permitted to exercise its common-law-making authority “to fill the interstices of a pervasively federal framework” as a result of “an implied delegation by Congress of lawmaking authority to the federal courts.” 19 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman, and Catherine T. Struve, Federal Practice and Procedure § 45Í.6 (2d ed. 2016). Such congressional intent is wholly lacking here, and “[w]hile the federal courts must fill statutory gaps in some exceptional circumstances, we may not stretch a statute to create such gaps_” 0ne20ne, 806 F.3d at 444 (Krause, J., concurring) (internal citation omitted).
In sum, the doctrine of equitable mootness enjoys minimal textual support, if any; at the same time, it contradicts the relevant appellate-jurisdiction statutes and purports to authorize the making of federal common law despite the complete lack of evidence that Congress intended to delegate such authority to the courts. This is not a strong foothold.
B. Equitable Mootness Is an Inappropriate Prudential Doctrine that Upsets the Constitutional Balance on which the Bankruptcy-Court System is Based.
Applying a doctrine that has no basis in the text of any statute or in Article III to avoid hearing appeals from bankruptcy-court decisions also raises separation-of-powers • concerns. Divorced as it is from any statutory basis, equitable mootness is nothing but a prudential doctrine of “judicially self-imposed limits.” Newdow, 542 U.S. at 11 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)) (discussing prudential standing); see Nordhojf Invs., Inc. v. Zenith Elec. Corp., 258 F.3d 180, 184 (3d Cir. 2001) (the doctrine- “is more accurately denominated as ‘prudential mootness’ ” (quoting In re Box Bros. Holding Corp., 194 B.R. 32, 45 (Bankr. D. Del. 1996))). However “prudential” equitable mootness may be, it operates to cut off entirely a litigant’s right to appeal in a case that would otherwise be within our appellate jurisdiction. Such a self-imposed straitjacket contradicts our “‘virtually unflagging obligation’ to exercise the jurisdiction that we have been given.” Continental Airlines, 91 F.3d at 568 (Alito, J., dissenting) (quoting Colorado River, 424 U.S. at 817). Although equitable-mootness is imposed by judges on ourselves, it is no less an affront to the separation of powers than a doctrine usurping jurisdiction that Congress never provided. See Cohens, 19 U.S. (6 Wheat.) at 404 (‘We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution”).
Similar concerns with decisions not to decide cases properly within a court’s jurisdiction have led the Supreme Court to cast doubt on other “prudential” doctrines that are not based in the text of any statute or in Article III principles. For example, the Supreme Court recently described a request “that we should decline to adjudicate [a] claim on [standing] grounds that are ‘prudential,’ rather than constitutional” as “in some tension with our recent reaffirmation of the principle that ‘a federal court’s obligation to hear and decide’ cases within its jurisdiction ‘is virtually unflagging.’ ” Lexmark, 134 S.Ct. at 1386 (quoting Sprint Commc’ns, Inc. v. Jacobs, — U.S. -, 134 S.Ct. 584, 591, 187 L.Ed.2d 505 (2013)); see also Susan B. Anthony List v. Driehaus, — U.S. -, 134 S.Ct. 2334, 2347, 189 L.Ed.2d 246 (2014) (rejecting a “prudential ripeness” argument as also “in some tension with our *811 recent reaffirmation of the principle that a federal court’s obligation to hear and decide cases within its jurisdiction is virtually unflagging” (quoting Lexmark, 134 S.Ct. at 1386)). “Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because ‘prudence’ dictates.” Lexmark, 134 S.Ct. at 1388 (internal citation omitted). This trend “has placed the continuing vitality of the prudential aspects of standing and ripeness ... in doubt.” Kentucky v. United States ex rel. Hagel, 759 F.3d 588, 596 n.3 (6th Cir. 2014). In my view, this suggests that our equitable-mootness doctrine is an overreach.
Nor am I convinced by the City’s argument that equitable mootness can be based in the same equitable powers that underlie the Supreme Court’s abstention doctrines. Those doctrines are an exception to our “virtually unflagging obligation” to hear cases within our jurisdiction, Quackenbush, 517 U.S. at 716, 116 S.Ct. 1712 (quoting Colorado River, 424 U.S. at 821, 96 S.Ct. 1236), and they arise “in otherwise ‘exceptional circumstances,’ where denying a federal forum would clearly serve an important countervailing interest,” id. (quoting Colorado River, 424 U.S. at 813, 96 S.Ct. 1236) (emphasis added). It is within that federalism-protecting frame that the Supreme Court has discussed the authority of a federal court “to decline to exercise its jurisdiction when it ‘is asked to employ its historic powers as a court of equity.’ ” Id. at 717, 116 S.Ct. 1712 (quoting Fair Assessment in Real Estate Ass’n, Inc. v. McNary, 454 U.S. 100, 120, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (Brennan, J., concurring)). The abstention doctrines that grow out of this bear little resemblance to equitable mootness. For one, they are generally based at least in part on federalism concerns that are not present in equitable-mootness cases. Additionally, they are abstention doctrines, not abdication doctrines. See One20ne, 805 F.3d at 440 (Krause, J., concurring). The result of equitable mootness is that no court' will hear the issue; abstention doctrines counsel in favor of deferring to a different forum. “[Wjhere there is no other forum and no later exercise of jurisdiction ... relinquishing jurisdiction is not abstention; it’s abdication.” Id.
A final concern with equitable mootness is that it undermines the delicate constitutional balance on which bankruptcy adjudication is based. See id. at 444-46 (Krause, J., concurring).. Bankruptcy courts are given the authority to “hear and determine all cases under title 11 and.all.core proceedings arising under title 11 ... subject to review under section 158,” 28 U.S.C. § 157(b)(1), which provides that “[t]he district courts of the United States shall have jurisdiction to hear.appeals . from final judgments, orders, and decrees” of bankruptcy courts, 28 U.S.C. § 158(a)(1), and that “[t]he courts of appeals shall have jurisdiction of appeals from all final decisions” of district courts in such appeals, 28 U.S.C. § 158(d)(1). This right to review in Article III courts remains key to the Supreme Court’s decisions setting forth the limitations on a bankruptcy court’s authority to decide cases. See, e.g., Wellness, 135 S. Ct. at 1944 (“allowing Article I adjudicators to decide claims submitted to them by consent does not offend the separation of powers so- long as Article III courts retain supervisory authority over the process” (emphasis added)). This flows from the separation-of-powers concerns that the bankruptcy-court system raises: “Even if a case is tried in the first'instance in a non-article III tribunal, a separation-of-powers interest remains in ensuring appellate review by an article III court.” Richard H. Fallon, Jr., Of Legislative Courts, Admin *812 istrative Agencies, and Article III, 101 Harv. L. Rev. 915, 939 (1988). The problem with equitable mootness is not only that it cuts off entirely the right to appeal to an Article III court, but that “it effectively delegates the power to prevent that review to the very non-Article III tribunal whose decision is at issue” because “bankruptcy courts control nearly all of the variables” that are considered in assessing whether an appeal is equitably moot. One2One, 805 F.3d at 445 (Krause, J., concurring); see also Nordhoff, 258 F.3d at 192 (Alito, J., concurring in the judgment) (“[E]quitable mootness ... can easily be used as a weapon to prevent any appellate review of bankruptcy court orders confirming reorganization plans. It .thus places far too much power in the hands of bankruptcy judges.”).
C. No Legal Basis Exists for Applying Equitable Mootness to Chapter 9.
The flaws in our equitable-mootness doctrine are many. It has, little basis in the text of the Bankruptcy Code, creates precisely the type of prudential limitation on our jurisdiction that the Supreme Court has criticized, and undermines the delicate constitutional balance on which the bankruptcy-court system is based. These concerns suggest that it is high time for-us to review the. doctrine’s basis as a full court sitting en banc.[2] For now, however, our panel is bound by our precedent applying the doctrine of equitable mootness. But in this case, we are asked to extend that questionable doctrine to a new area. Although we must extend even a bad precedent when no principled basis exists for distinguishing between the context in which it arose and that to which we are asked to extend it, see, e.g., United States v. Honeycutt, 816 F.3d 362, 381-83 (6th Cir. 2016) (Moore, J., concurring in the judgment) (critiquing precedent regarding the interpretation of a federal forfeiture statute, but agreeing that it must be applied to “a statute involving identical language”), petition for cert. filed, 2016 WL 4088374 (U.S. July 29, 2016) (No. 16-142), I do not believe that this case presents such a situation. Our precedent adopting the doctrine of equitable mootness in Chapter 11 cases gives little hint of the legal basis for its adoption, but what can be discerned from those opinions suggests that the doctrine grows out of statutory provisions that do not apply to Chapter 9 of the Bankruptcy Code.
The Majority reads our precedent extremely broadly to demand the application of equitable mootness in any case involving strong reliance interests. I cannot discern the basis for such a broad rule from our precedent, which applied cases from other circuits without adding analysis. I also fear *813 that the Majority’s approach will be impossible to cabin because all final decisions of district courts create reliance-interests and all appeals have the potential to upset those interests. The Majority’s rationale would appear to create a new requirement for appellate review in every case: That the appeal not risk upsetting too strong a relianee interest. Where this would end I do not know, but cases have already.begun to illustrate the breadth of the doctrinal creep that we could face. The Seventh Circuit has applied equitable mootness to an appeal seeking to challenge a forfeiture settlement arising out of an individual’s conviction for a complex RICO violation, United States v. Segal, 432 F.3d 767, 773-74 (7th Cir. 2005), and the Third Circuit was even asked to apply the doctrine as a basis for cutting off appeals in complex class actions, In re Diet Drugs, 582 F.3d 524, 552 n.55 (3d Cir. 2009). Absent a specific statutory grounding, the Majority’s expansion of our equitable-mootness doctrine will create a new pseudo-jurisdictional rule that appears to be boundless.
The best reading of our precedent must look to the precise rationale of the cases that our court cited to support our adoption of equitable mootness. Our equitable-mootness cases all trace back to City of Covington, see supra at 798-99, which did not explain the legal' basis for equitable mootness, except to cite the Seventh Circuit’s decision in UNR. See 71 F.3d at 1225. The statutory-gap-filling theory used by the Seventh Circuit in UNR to justify the adoption of equitable mootness—hardly viable in the context of the Chapter 11 proceedings in which it arose, see supra at 799-800—is utterly inapplicable to Chapter 9. As best articulated, equitable mootness has been based on three statutory provisions, two of which—11 U.S.C. §§ 363(m) and 1127(b)—do not apply to Chapter 9 cases. See 11 U.S.C. § 901(a) (listing provisions of other Chapters of the Bankruptcy Code that “apply in a case under” Chapter 9). Those two provisions were the entire cloth from which the Seventh Circuit stitched a policy in favor of venerating reliance interests. See UNR, 20 F.3d at 769. The third provision that is cited—by other courts, but not ours or the Seventh Circuit in UNR—is 11 U.S.C. § 364(e), which limits appeals from orders authorizing a bankruptcy trustee “to obtain credit or incur debt” or “grant[ing] ... a priority or a lien.” Although that provision applies to Chapter 9 cases, 11 U.S.C. § 901(a), it is an incredibly thin reed on which to base a doctrine that would cut off appellate rights related to orders confirming reorganization plans, without regard to whether they relate to orders that are statutorily, moot under § 364(e). Indeed, § 364(e), “[b]y [its] terms ... do[es] not prevent an appellate court from hearing an appeal, or even from granting a particular remedy; [it] simply prevents] the appellate court’s remedy from affecting certain transactions.” One2One, 805 F.3d at 443 (Krause, J., concurring). The statutory, basis for applying equitable mootness to Chapter 11 cases is therefore not present at all in Chapter 9 cases, so our precedent does not bind us to extend equitable mootness to Chapter 9.
Nor is there any other compelling reason to apply the. doctrine of equitable mootness to Chapter 9 appeals. As I have discussed, equitable mootness is highly questionable, even under Chapter 11. And, of the three decisions applying the doctrine of equitable;mootness to Chapter 9 appeals, two provided no analysis of why the doctrine applied in Chapter 9. See In re City of Vallejo, 551 Fed.Appx. 339 (9th Cir. 2013); Alexander v. Barnwell Cty. Hosp., 498 B.R. 550 (D.S.C. 2013). The Bankruptcy Appellate Panel of the Ninth Circuit recently held that the doctrine applied to Chapter 9 solely because of the *814 finality and reliance concerns that a city’s residents had in a case dealing with their city’s bankruptcy, In re City of Stockton, 542 B.R. 261, 274 (9th Cir. BAP 2015), and the district court in this case similarly held that the doctrine applied to Chapter 9 because the relevant reliance interests were similar to those that arise in Chapter 11, see R. 52 (Sept. 29, 2015 Op., at 8-11) (Page ID #65167-65170). This focus on reliance interests suffers from the same defect as the Majority’s focus on the same. The lack of any other justification for applying equitable mootness to' Chapter 9 cases, combined with my deep skepticism about the doctrine’s wisdom, convinces me that there is no reason to extend to the doctrine to Chapter 9 of the Bankruptcy Code. I would therefore reverse the district court’s conclusion that the appeals were equitably moot and remand for further proceedings.
II.
In deciding not to decide this ease, the Majority decides much. The Majority extends our ill-reasoned equitable-mootness doctrine to a new context, imposing an unsupported and damaging limit on our appellate review that will be impossible to cabin in a principled way. There is no textual support for this limitation, even accepting the minimal textual support for applying equitable mootness to Chapter 11 cases. Instead, the Majority expands a species of prudential mootness, the precise kind of pseudo-jurisdictional doctrine that the Supreme Court has suggested conflicts with our “virtually unflagging obligation ... to exercise the jurisdiction given [us].” Quackenbush, 517 U.S. at 716 (first alteration in original) (quoting Colorado River, 424 U.S. at 821). And in doing so, the Majority further upends the delicate constitutional balance on which our bankruptcy-adjudication system is based by ensuring that those who seek to ■ appeal the approval of a bankruptcy plan may never have them claims heard by an Article III judge. The Majority makes these missteps all in the name of protecting reliance interests. I have my doubts about the reasonableness of any reliance on a reorganization plan that is known to be subject to significant challenge on appeal, but even if the Majority’s concern about reliance interests is fully valid, it is not our job to write a law to protect those interests. “Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty.” Cohens, 19 U.S. (6 Wheat.) at 404. The Majority failing to do so, I respectfully dissent.

. In 1999, we declined to dismiss an appeal as equitably moot, but did so because the relief sought would not upset the bankruptcy plan. See In re Arbors of Houston Assocs. Ltd. P’ship, No. 97-2099, 1999 WL 17649, at *2-3 (6th Cir. Jan. 4, 1999).

. I also note that the policy justifications for equitable mootness are not necessarily as strong as courts have presumed. The idea is that the reliance interests generated by a bankruptcy court’s confirmation of a reorganization plan can be so strong that it becomes inequitable to upset them. Yet, in any'other context, we would not hesitate to add that a party should not rely blindly on the decision of a trial court when timely appellate proceedings are commenced. Those relying on a bankruptcy court’s decision should be aware of the risk that an appeal will disrupt it, Nonetheless, equitable mootness "rests on the notion that, once a plan has taken effect, its beneficiaries—even parties in the bankruptcy court who pushed for confirmation over the legal objections of dissenting creditors—are entitled to rely on the challenged plan’s not changing, whether or not it was infected by legal error.” Pet’n for Writ of Certiorari, Aurelius Capital Mgmt., LP v. Tribune Media Co., No. 15-891, 2016 WL 159570, at *2 (Jan, 11, 2016), cert. denied, — U.S. -, 136 S.Ct. 1459, 194 L.Ed.2d 575 (2016). If ever we reconsider the equitable-mootness doctrine, the reasonableness of the reliance interests the doctrine seeks to protect should be explored in much greater depth.